Thomas Mendoza AGUILAR, Appellant,

v.

UNITED STATES of America, Appellee.

No. 19836.

United States Court of Appeals Ninth Circuit.

July 8, 1966.

James M. Hall, Luce, Forward, Hamilton & Scripps, San Diego, Cal., for appellant.

Manuel L. Real, U. S. Atty., John K. Van de Kamp, Asst. U. S. Atty., Chief, Crim. Div., J. Brin Schulman, Asst. U. S. Atty., Asst. Chief, Crim. Div., Alan D. Sirota, Asst. U. S. Atty., Los Angeles, Cal., for appellee.

Before CHAMBERS, DUNIWAY and ELY, Circuit Judges.

CHAMBERS, Circuit Judge.

Aguilar was caught crossing the border from Tijuana, Mexico, to San Ysidro, California, at the American customs checkpoint while driving another's automobile which had about 98 pounds of marijuana in small packages secreted within it. None were visible without prying. He was charged with smuggling the stuff across the line and with having transported and concealed it. A jury was waived and the district judge found him guilty. A concurrent sentence was imposed for the two counts. We affirm.

The first point on the appeal attacks the sufficiency of the evidence of possession. The car was apparently purchased in the Los Angeles area by one Rolanda Machaka, but we know nothing about him. Aguilar is an automobile mechanic in Tijuana. Apparently his place of business was a street curb. Aguilar took the stand in his own defense. He testified that a Mr. Salvador had been negotiating with him for a couple of days to repair a bad oil pressure condition on the car. Salvador had been introduced to him, he said, by a very casual acquaintance, a Mr. Morales. Eventually it was agreed that Aguilar was to repair the car and also permission was given for Aguilar to take the car and see his cousin in Imperial Beach, California, (some five to seven miles from San Ysidro) about some immigration application proof. Aguilar swore positively he had no knowledge of the presence of the contraband. Of course, the story if accepted would exonerate him. We interpret the trial judge's announcement of decision as meaning that Aguilar had knowledge of the presence (or had reason to believe it) of the marijuana. This is implicit from his remarks that this was another case where the defendant's poverty had led him to accept a small cash offer to drive the contraband across the border.

■ There was no direct evidence or admission of knowledge. But out of Aguilar's own words, first, his alibi on

arrest and, second, his testimony which followed the line of his alibi, the trial judge, in the full setting here, was entitled to believe the story "fishy" and to draw affirmative inferences of knowledge. Details about Salvador and Morales were rather unsatisfactory. Also, the court could have concluded that the story about intending to go to his cousin's house was hand made. We shall not argue our cases and compare them with this one. We do hold he does not come within the facts shown on Mrs. Arellanes in Arellanes v. United States, 9 Cir., 302 F.2d 603. The facts on possession or no possession are quite similar to those in Travis v. United States, 9 Cir., (decided June 14, 1966) 362 F.2d 477. In our view, Eason v. United States, 9 Cir., 281 F.2d 818, 87 A.L.R.2d 842, and Covarrubias v. United States, 9 Cir., 272 F.2d 352, indicate affirmance.

This is not a de minimis quantity case where incidence of error in finding knowledge would be high. Neither is it a passenger case nor a case of divided control over a repository.

■ Appellant's second substantial point is that the trial court denied those portions of his motion for a bill of particulars which requested that the government furnish him the name of any informers and the names of any persons who had been paid or promised any bounty for assisting in the discovery of the marijuana at the border.

Underlying the foregoing requests is the idea that such information might have enabled Aguilar to show that he was the victim of a frame-up. Obviously, here no informer or bounty man testified. The witnesses were all government officers, members of Aguilar's family, and Aguilar himself. So there was no necessity to know in order to meet affirmative testimony of the trial.

Of course, in some situations the government does have to disclose, or quit, ofttimes resulting in the dismissal of cases rather than imperil the life of the informer in this dirty business. On the showing made here, denial of the requested disclosure was not clearly erroneous.

Appellant relies heavily upon Roviaro v. United States, 353 U.S. 53, 77 S.Ct. 623, 1 L.Ed.2d 639, and to some extent on Alcorta v. State of Texas, 355 U.S. 28, 78 S.Ct. 103, 2 L.Ed.2d 9. In the former, a John Doe was named in the indictment and was an actor at the scene of the crime. In Alcorta, the problem concerned a prosecution witness who had testified falsely. The decisions in Alcorta and Roviaro should have been foreseen.

The apposite thing we find in Roviaro, 353 U.S. p. 62, 77 S.Ct. p. 628, is:

> "The problem is one that calls for balancing the public interest in protecting the flow of information against the individual's right to prepare his defense."

Here, at best, the desire for the information could have been only a hope that it might turn up something. No practical need for it was ever indicated at the outset or by the time the trial concluded. The balance here, under Roviaro, falls with society.

At the conclusion of the trial, the judge expressed great sympathy for the defendant and lamented the mandatory statutory requirement of a long sentence, five years. We quite agree. Here was a young man with a previous clean record, and there was no indication he was a user of narcotics or inside a narcotics ring. Apparently he was a victim of his personal economics. When the law gets no closer than this to the real rascal, one must wonder about the policy of it, although it be beyond our function.

Appellant should know that his appointed counsel has done a splendid piece of work on what he had as facts. Money could not have bought any better.

Judgment affirmed.