**UNITED STATES of America, Plaintiff–Appellee,**

v.

**Francisco Jimenez RECIO, Defendant–Appellant.**

**United States of America, Plaintiff–Appellee,**

v.

**Adrian Lopez–Meza, Defendant–Appellant.**

**Nos. 99–30135, 99–30145.**

United States Court of Appeals, Ninth Circuit.

Argued and Submitted July 9, 2003.

Filed June 15, 2004.

---

8. We therefore need not address the state's arguments on the merits.

M. Karl Shurtliff, Pike & Shurtliff, Boise, ID, for defendant-appellant Recio; Thomas A. Sullivan, Wiebe & Fouser, Caldwell, ID, for defendant-appellant Lopez–Meza.

Thomas E. Moss, United States Attorney for the District of Idaho, Department of Justice, Boise, ID; Alan G. Burrow, Assistant United States Attorney, Department of Justice, Boise, ID, for the plaintiff-appellee.

Before: BROWNING, B. FLETCHER, and GOULD, Circuit Judges.

Opinion by Judge BROWNING; Dissent by Judge GOULD

JAMES R. BROWNING, Circuit Judge:

This case comes to us on remand from the United States Supreme Court. In *United States v. Jimenez Recio*, 537 U.S. 270, 123 S.Ct. 819, 154 L.Ed.2d 744 (2003) (*Recio II*), the Supreme Court overruled this Circuit's criminal conspiracy rule as set forth in *United States v. Cruz*, 127 F.3d 791 (9th Cir.1997). The Court reversed our judgment in *United States v. Jimenez Recio*, 258 F.3d 1069 (9th Cir. 2001) (*Recio I*), insofar as that case relied on *Cruz's* holding and remanded for further proceedings consistent with its opinion. We must now address the extent to which the Supreme Court's decision in *Recio II* requires modification of our prior decision.

The *Cruz* rule dictated the framework of appellants' second trial for conspiracy to distribute cocaine and marijuana, and use of the rule amounted to plain error. We therefore remand to the Idaho District Court with instructions to vacate appellants' conspiracy convictions and to order a new trial.

## I. Procedural History

The underlying facts of this case are set forth in our previous decision. *See Recio I*, 258 F.3d at 1070–73; *see also id.* at 1078 (Gould, J., dissenting). We review only the complicated procedural course this case has taken.

In 1998, appellants Francisco Jimenez Recio[1] and Adrian Lopez–Meza proceeded to trial ("first trial") on counts of conspiracy to distribute cocaine and/or marijuana, and possession with intent to distribute cocaine and/or marijuana. A jury returned guilty verdicts on all counts. Lopez–Meza entered a post-verdict motion for acquittal under Federal Rule of Criminal Procedure 29(c), claiming that there was insufficient evidence to convict him on either the conspiracy or possession count. Jimenez Recio moved for judgment of acquittal on the conspiracy count alone, also pursuant to Rule 29(c).[2] Both Jimenez Recio and Lopez–Meza based their motions for acquittal on the *Cruz* conspiracy rule, which held that a conspiracy continues " 'until there is affirmative evidence of abandonment, withdrawal, disavowal or defeat of the object of the conspiracy.' " *See Cruz*, 127 F.3d at 795 (quoting *United States v. Castro*, 972 F.2d 1107, 1112 (9th Cir.1992)). The district court had overlooked the *Cruz* rule in conducting the trial and had not instructed the jury that Jimenez Recio and Lopez–Meza could be found guilty of conspiracy only if they joined the conspiracy prior to the government's seizure of the drug shipment. Jimenez Recio and Lopez–Meza argued that the government had produced insufficient evidence to show that either defendant had been involved in the conspiracy prior to seizure of the drugs by government agents.

1. During the proceedings in this case, appellant's lawyers have referred to appellant alternately as "Jimenez Recio" and as "Jiminez Recio." Since the former is the more common spelling of the name, we will use it in this opinion as we did in *Recio I*.

2. Recio's lawyer failed to move for acquittal on the possession charge, although the district court noted that "many of the same issues considered in evaluating Lopez's motion for judgment of acquittal on his possession with intent to deliver charge, may well apply to Jiminez, as well." *United States v. Jiminez*, CR No. 97–00103, Memorandum and Order at 2 n. 1 (D.Idaho July 27, 1998). Subsequent to the district court's memorandum and order on the Rule 29(c) motions, Recio's counsel filed an Amended Motion for Judgment of Acquittal, seeking to add the possession charge to the already adjudicated Rule 29(c) motion on the conspiracy charge. The district court denied the Amended Motion, stating that it had no authority to accept an untimely Rule 29(c) motion to acquit.

The district court denied both motions for acquittal on the conspiracy counts, stating that there was sufficient evidence for a rational jury to find that the defendants had been involved in the conspiracy prior to the government's seizure of the drugs. The court also denied Lopez–Meza's motion for acquittal on the possession count, holding that there was sufficient evidence tying the defendant directly to the drugs for a rational jury to convict.

Although it rejected the motions for acquittal, the district court held that "because of the Court's error in instructing the jury, the granting of a new trial is, 'required in the interests of justice.'" *United States v. Jiminez,* CR No. 97–00103, Memorandum and Order at 7 (D.Idaho July 27, 1998) (quoting Federal Rule of Criminal Procedure 33). The court stated that it was possible that the jury had impermissibly convicted both defendants based solely on post-seizure involvement in the conspiracy, since the jury instructions had not incorporated the *Cruz* rule. The court also noted that the jury instructions on the possession count included a *Pinkerton* instruction, which allowed the jury to convict Lopez–Meza of possession based on the actions of co-conspirators during the course and in furtherance of the conspiracy. *See Pinkerton v. United States,* 328 U.S. 640, 646–47, 66 S.Ct. 1180, 90 L.Ed. 1489 (1946). Therefore, the jury instructions on the possession count were also infected by the neglect of the *Cruz* rule, since it was possible that the jury convicted Lopez–Meza on the possession count based solely on the post-seizure actions of his co-conspirator, Jimenez Recio. Although it acknowledged that neither defendant had moved for a new trial and that Federal Rule of Criminal Procedure 33 did not, on its face, provide for *sua sponte* conversion of motions for acquittal to motions for a new trial, the district court determined that Rule 33's failure to provide judges with such power

was based on double jeopardy concerns not applicable to the case at hand. The district court vacated the conspiracy convictions and Lopez–Meza's possession conviction, and ordered a second trial. The government subsequently dropped the possession charge against Lopez–Meza.

Appellants' second trial for conspiracy was conducted in accordance with the *Cruz* rule. However, in addition to the "single-load" conspiracy charge that was the subject of the first trial and was governed by *Cruz,* the prosecution relied on a broader, "multi-load" conspiracy theory, introducing evidence that the drug shipment bore the hallmarks of a larger conspiracy involving more than one drug load. Under this multi-load theory, the defendants could be convicted based on either pre- or post-seizure involvement in the broader conspiracy. The jury again returned guilty verdicts on the conspiracy counts.

After the district court denied renewed Rule 29(c) motions for acquittal, Jimenez Recio and Lopez–Meza appealed to this Court. Both appellants made the following claims: (1) that the district court had erred in denying their motions for acquittal after both the first and the second trials; (2) that the district court had given an erroneous jury instruction on the scope of the conspiracy; and (3) that the district court had erred by denying a motion for mistrial due to prosecutorial misconduct. In addition, Lopez–Meza claimed that the district court erred in allowing evidence of the odor of burned marijuana in the blue Mazda that he was driving when arrested. Jimenez Recio also claimed that he had received ineffective assistance of counsel when his lawyer failed to raise a motion for acquittal on his possession count after the first trial.

In *Recio I,* a majority of this panel held that there was insufficient evidence raised at the second trial for a rational jury to

conclude that Jimenez Recio and Lopez–Meza had been involved in either the single-load conspiracy prior to the government's seizure of the drugs, or a broader, multi-load conspiracy pre- or post-seizure. *Recio I,* 258 F.3d at 1071–73. We therefore reversed and dismissed with prejudice the conspiracy convictions. *Id.* at 1074. In addition, the panel majority held that Jimenez Recio's first lawyer had provided ineffective assistance in failing to raise a motion for acquittal on the possession count after the first trial. *Id.* The panel rejected Jimenez Recio's other claims pertaining to his possession conviction. The panel majority opinion did not reach the propriety or effect of reviewing evidence presented at the first trial. *Id.* at 1071 n. 1.

The Supreme Court granted certiorari and overruled the *Cruz* conspiracy rule. The Court held that "[a] conspiracy does not automatically terminate simply because the Government, unbeknownst to some of the conspirators, has 'defeated' the conspiracy's 'object'." *Recio II,* 537 U.S. at 274, 123 S.Ct. 819. The Court then remanded the case for further proceedings consistent with its opinion.

On remand, the government argues that we can and should affirm appellants' conspiracy convictions, despite the use of the *Cruz* rule in the second trial, because "[t]he jury was properly instructed and determined defendants' guilt as to all elements of conspiracy" and the *Cruz* instruction "only served to 'pose[ ] an unnecessary burden on the Government that in no way prejudiced the appellants.'" Appellants argue that the government must be held to its "chosen theory of the case," namely that it was required to prove appellants' pre-seizure involvement in the conspiracy. Appellants claim that the government is now estopped from asserting

that appellants were involved post-seizure and, because there remains insufficient evidence of pre-seizure involvement, our decision in *Recio I* must be reaffirmed.

## II. Conspiracy Convictions

To address the effect of the Supreme Court's overruling of the *Cruz* rule on our previous decision, we must distinguish between the prosecution's multi-load conspiracy charge and its single-load charge.

### A. Multi–Load Conspiracy

In *Recio I,* the panel majority found that there was insufficient evidence for a reasonable jury to convict Jimenez Recio and Lopez–Meza of being part of a broader, multi-load drug conspiracy, either before or after the seizure of the drug shipment. In so holding, the panel majority did not rely on the *Cruz* conspiracy rule.[3] Instead, we noted that under this Circuit's decision in *United States v. Umagat,* 998 F.2d 770, 773–74 (9th Cir.1993), "the limited role Defendants played in the November 18 shipment alone is insufficient to charge them with complicity for any prior loads." *Recio I,* 258 F.3d at 1072–73. Because the evidence of the Defendants' role in the November 18 shipment itself was insufficient to prove complicity in a multi-load conspiracy, we weighed the circumstantial evidence of the Defendants' prior involvement in a broader conspiracy. *Id.* at 1073. We found this evidence insufficient to prove involvement in a multi-load conspiracy. *Id.*

Our determination in *Recio I* that there was insufficient evidence for a rational jury to convict the defendants of participation in a multi-load conspiracy was not dependent on the *Cruz* rule. Therefore, the Supreme Court's overruling of *Cruz*

---

**3.** Indeed, the prosecution had introduced the broader conspiracy theory in the second trial

in order to circumvent the *Cruz* rule. *See Recio I,* 258 F.3d at 1072.

does not alter our approach to evaluating the evidence presented by the Government in this regard. There is no reason to revise our previous decision that the government did not produce sufficient evidence for a rational jury to convict Jimenez Recio and Lopez–Meza of involvement in a multi-load conspiracy.

## B. Single–Load Conspiracy

We next address the impact of *Recio II* on our previous evaluation of appellants' conviction on the single-load conspiracy theory. We conclude that the entire framework of the second trial was predicated on *Cruz* and that use of this framework amounted to plain error. We therefore reverse the appellants' conspiracy convictions and remand the case for a new trial.

In *Recio I*, we weighed the evidence of involvement in the single-load conspiracy under the *Cruz* rule. *See Recio I*, 258 F.3d at 1071. We remain convinced that there is insufficient evidence for a rational jury to conclude that Jimenez Recio and Lopez–Meza joined the single-load conspiracy prior to the government's seizure of the drug shipment at 1:18 a.m. on November 18. This determination was not called into question by the Supreme Court's decision in *Recio II*. The logical issue raised by the Supreme Court's overruling of *Cruz* in *Recio II* is whether the evidence of appellants' *post-seizure* involvement in the single-load conspiracy was sufficient for a rational jury to convict the appellants on this basis. However, because use of the *Cruz* rule in the second trial amounted to plain error, we do not address this issue ourselves, but rather remand for a third trial under post-*Cruz* conspiracy principles.

Appellants' second trial and our decision in *Recio I* reversing appellants' convictions for the single-load conspiracy were both predicated on the *Cruz* rule. The second trial was required solely because of the failure to address *Cruz* in the first trial, and the framework of the second trial was dictated by *Cruz*. The Government introduced new evidence designed to prove that the defendants were involved in the conspiracy prior to the drug seizure. Appellants tailored their defense strategy around the *Cruz* rule, challenging the government's evidence only as it applied to pre-seizure involvement in the single-load conspiracy. Finally, the jury instructions in the second trial included an instruction based on *Cruz*:

A defendant may only be found guilty of the conspiracy charged in the indictment if he joined the conspiracy at a time when it was possible to achieve the objective of that conspiracy.

Therefore, if you find beyond reasonable doubt that a conspiracy existed, the sole object of which was the possession with intent to deliver and/or the delivery of the controlled substances seized by the authorities in Las Vegas, Nevada on November 18, 1997, a defendant may be found guilty of that conspiracy only if you find beyond a reasonable doubt that the defendant joined or became a member of the conspiracy prior to 1:18 a.m. on November 18, 1997.

Under this instruction, the jury was barred from convicting Jimenez Recio and Lopez–Meza for the single-load conspiracy if it found that the defendants joined the conspiracy only after the drugs were seized by the government.

 Neither party objected to the application of the *Cruz* rule at the second trial or on appeal in *Recio I*, and neither party argues on remand from *Recio II* that use of the *Cruz* rule in the second trial requires reversal of the convictions and a new trial. Since this case is on direct appeal, we have authority to review only for plain error. Fed.R.Crim.P.

52(b)("A plain error that affects substantial rights may be considered even though it was not brought to the court's attention."); *United States v. Portillo–Mendoza,* 273 F.3d 1224, 1227 (9th Cir.2001). In reviewing for plain error, we apply the four-part test set forth in *United States v. Olano,* 507 U.S. 725, 113 S.Ct. 1770, 123 L.Ed.2d 508 (1993). To notice error under Rule 52(b), we must find that (1) there is "error"; (2) it was "plain"; and (3) the error affected "substantial rights." *Id.* at 732–35, 113 S.Ct. 1770. If these conditions are met, we may notice the forfeited error only if the error "seriously affect[s] the fairness, integrity or public reputation of judicial proceedings." *Id.* at 736, 113 S.Ct. 1770 (internal quotation marks omitted). Furthermore, the four-part plain error test set forth in *Olano* applies on direct appeal even where an intervening change in the law is the source of the error. *Johnson v. United States,* 520 U.S. 461, 466–68, 117 S.Ct. 1544, 137 L.Ed.2d 718 (1997); *see also United States v. Keys,* 133 F.3d 1282, 1284 (9th Cir.1998) (en banc), *as amended by* 143 F.3d 479 *and* 153 F.3d 925. Therefore, the fact that there was no reason for either party to object to the *Cruz* framework during the second trial or on appeal is not grounds for reviewing the trial error under the Fed.R.Crim.P. 52(a) harmless error standard. *Keys,* 133 F.3d at 1286.[4]

 The first prong of the *Olano* test is met in this case, since it is beyond question that "if [appellants'] trial occurred today,"

inclusion of the *Cruz*-based jury instruction would be in error. *See Johnson,* 520 U.S. at 467, 117 S.Ct. 1544. The second prong of the test is also met. Error is plain where it is "clear and obvious." *United States v. Fuchs,* 218 F.3d 957, 962 (9th Cir.2000). Where a legal doctrine is overruled by the Supreme Court, the district court's error in applying that doctrine below is "plain." As the Court held in *Johnson,* "in a case such as this—where the law at the time of trial was settled and clearly contrary to the law at the time of appeal—it is enough that an error be 'plain' at the time of appellate consideration." 520 U.S. at 468, 117 S.Ct. 1544; *see also United States v. Minore,* 292 F.3d 1109, 1118 (9th Cir.2002).

In applying the third prong of the *Olano* test, we "conduct a harmless error inquiry in order to determine if the error was prejudicial to the defendant." *United States v. Castillo–Casiano,* 198 F.3d 787, 790 (9th Cir.1999), *as amended by* 204 F.3d 1257 (9th Cir.2000); *Minore,* 292 F.3d at 1118–19.[5] In most cases, the third prong of the *Olano* test requires that we determine whether the error in question was "prejudicial," in the sense that it " 'affected the outcome of the district court proceedings' " in a manner that violated the substantial rights of the defendant. *United States v. Jimenez–Dominguez,* 296 F.3d 863, 867 (9th Cir.2002) (quoting *Olano,* 507 U.S. at 734, 113 S.Ct. 1770); *Unit-*

---

**4.** *Johnson* also held that the existence of a structural error in the trial proceedings does not preclude application of Rule 52(b) plain error review on direct appeal. *See Johnson,* 520 U.S. at 466, 117 S.Ct. 1544; *United States v. Uchimura,* 125 F.3d 1282, 1286 (9th Cir. 1997). Therefore, although we ultimately determine that the second trial was marred by structural error, we still apply the *Olano* test.

**5.** The Supreme Court has explained the difference between Federal Rules of Criminal Procedure 52(a) and (b) in this regard:

When the defendant has made a timely objection to an error and Rule 52(a) applies, a court of appeals normally engages in a specific analysis of the district court record—a so-called "harmless error" inquiry—to determine whether the error was prejudicial. Rule 52(b) normally requires the same kind of inquiry, with one important difference: It is the defendant rather than the Government who bears the burden of persuasion with respect to prejudice.

*Olano,* 507 U.S. at 734, 113 S.Ct. 1770.

*ed States v. Fuchs,* 218 F.3d at 962. In one sense, the use of the *Cruz* framework in the second trial did not prejudice Jimenez Recio and Lopez–Meza. As the government correctly points out, the rule required the government to prove more than is required following *Recio II.* However, the effect of the erroneous framework of the second trial is apparent when viewed in conjunction with our determination that there is insufficient evidence for a rational jury to convict the appellants of the single-load conspiracy based on pre-seizure involvement. Were we now to review the evidence presented at the second trial and determine that there is legally sufficient evidence to show that appellants joined the conspiracy *after* the drug seizure, we would uphold appellants' conviction on a basis that the jury was barred from reaching.[6]

■ The Supreme Court has distinguished between "structural defects in the constitution of the trial mechanism, which defy analysis by 'harmless-error' standards," *Arizona v. Fulminante,* 499 U.S. 279, 309, 111 S.Ct. 1246, 113 L.Ed.2d 302 (1991), and trial errors that occur "during the presentation of the case to the jury, and which may therefore be quantitatively assessed in the context of other evidence presented." *Id.* at 307–08, 111 S.Ct. 1246. This Circuit has defined structural error as an error that "permeate[s] the entire conduct of the trial from beginning to end, or affect[s] the framework within which the trial proceeds." *Rice v. Wood,* 77 F.3d 1138, 1141 (9th Cir.1996) (internal citations and quotation marks omitted); *see also United States v. Walters,* 309 F.3d 589, 593 (9th Cir.2002). We have previously indicated, without holding, that where a fault in the trial proceedings constitutes a structural error, the third prong of the *Olano*

test is satisfied, and a specific showing of prejudice is not necessary. *United States v. Perez,* 116 F.3d 840, 847 (9th Cir.1997) (en banc); *see also Johnson,* 520 U.S. at 468, 117 S.Ct. 1544 (stating that in assessing the third prong of the *Olano* test, "petitioner's argument that the failure to submit an element of the offense to the jury is 'structural error' becomes relevant," and assuming *arguendo* that the error affected substantial rights). At least two other circuits have recognized that structural errors satisfy the third prong of the *Olano* test. *See United States v. Vazquez,* 271 F.3d 93, 100 (3d Cir.2001); *United States v. David,* 83 F.3d 638, 646–47 (4th Cir.1996). We now join these circuits and hold that a finding of structural error satisfies the third prong of the *Olano* test.

In *Sullivan v. Louisiana,* 508 U.S. 275, 282, 113 S.Ct. 2078, 124 L.Ed.2d 182 (1993), the Supreme Court held that a deficient reasonable-doubt instruction constitutes a structural error and is not subject to harmless-error analysis. The Court first noted that the Sixth Amendment right to a jury trial "includes, of course, as its most important element, the right to have the jury, rather than the judge, reach the requisite finding." *Id.* at 277, 113 S.Ct. 2078. A deficient reasonable doubt instruction, the Court then held, "vitiates *all* the jury's findings." *Id.* at 281, 113 S.Ct. 2078 (emphasis in original). Therefore, the faulty reasonable doubt instruction in question could not be cured because "[t]he Sixth Amendment requires more than appellate speculation about a hypothetical jury's action, or else directed verdicts for the State would be sustainable on appeal; it requires an actual finding of guilty." *Id.* at 280, 113 S.Ct.

---

6. We assume that the jury followed the trial court's instructions. *See Francis v. Franklin,* 471 U.S. 307, 324 n. 9, 105 S.Ct. 1965, 85 L.Ed.2d 344 (1985); *McNeil v. Middleton,* 344 F.3d 988, 1001 (9th Cir.2003).

2078 (citing *Bollenbach v. United States*, 326 U.S. 607, 614, 66 S.Ct. 402, 90 L.Ed. 350 (1946)). *Sullivan's* logic in this regard "applies with even greater force" where "there was *no jury finding at all*." *Summerlin v. Stewart*, 341 F.3d 1082, 1117 (9th Cir.) (en banc) (emphasis in original), *cert. granted in part*, ___ U.S. ___, 124 S.Ct. 833, 157 L.Ed.2d 692 (2003) (03–526).

When viewed in conjunction with our determination that there was insufficient evidence for a rational jury to find that appellants joined the conspiracy pre-seizure, the *Cruz* framework employed in the second trial constituted structural error. The application of the *Cruz* rule "affect[ed] the framework within which the trial proceed[ed]." *Fulminante*, 499 U.S. at 310, 111 S.Ct. 1246. The government tailored its evidence around the *Cruz* rule, appellants based their defense strategy on the *Cruz* rule, and the trial court instructed the jury based on the *Cruz* rule. The jury was barred from convicting if it found that the appellants joined the conspiracy only after the government seized the drug shipment. Thus, for purposes of the question now before us—whether there is sufficient evidence to find that appellants joined the conspiracy post-seizure—there is no jury finding for us to affirm or reverse. We "may not direct a verdict for the State, no matter how overwhelming the evidence." *Sullivan*, 508 U.S. at 277, 113 S.Ct. 2078.

The fundamental nature of the trial error in this case distinguishes it from those cases in which an acknowledged element of the offense was argued at trial but submitted to the trial judge rather than the jury for determination. The latter type of error is subject to harmless error review. *See Neder v. United States*, 527 U.S. 1, 7–15, 119 S.Ct. 1827, 144 L.Ed.2d 35 (1999) (applying harmless error review to failure to submit materiality element of a tax fraud charge to jury); *United States v. Buckland*, 289 F.3d 558, 568–69 (9th Cir.

2002) (en banc) (applying harmless error review to failure to charge drug quantity in indictment and submit it to the jury for purposes of sentencing); *Keys*, 133 F.3d at 1286–87 (applying harmless error review to failure to submit materiality element of perjury charge to jury). In cases involving a single element of the charged crime that is submitted to the wrong trier of fact, the defendant has had opportunity and reason to challenge the element at trial. *See Keys*, 133 F.3d at 1287 ("Keys had an opportunity to argue materiality in his perjury case, albeit to the judge rather than the jury."); *see also Buckland*, 289 F.3d at 572 (citing as basis for ruling in *Keys* that the defendant failed to contest the element as part of his defense).

This case is also not like those where the trial court's jury instructions misstate or omit one element of the charged crime. *See Perez*, 116 F.3d at 847 n. 11 (holding that it is not structural error for a trial court to omit a necessary element from its jury instructions). The trial judge's error in this case was not limited to one element of conspiracy. Instead, the erroneous instruction prevented the jury from considering an entire category of evidence—evidence of post-seizure involvement—as relevant to *any* of the elements of a single-load conspiracy. When an element is misstated or omitted, the jury is prevented only from reaching a "complete verdict." *Neder*, 527 U.S. at 12, 13, 119 S.Ct. 1827. In this case, by contrast, the jury returned *no* verdict on the only theory of the case still available to the government: a single-load conspiracy proved by post-seizure evidence. *See Summerlin*, 341 F.3d at 1118 n. 20 (distinguishing *Neder*, stating that "[t]here is a vast difference between not submitting the element of materiality to the jury for decision and having no jury decision at all."). As the entire premise on which the second trial was based, the *Cruz* rule pre-

vented the jury from considering the government's only viable theory of the case and, as a result, rendered the second trial "an unreliable vehicle for determining guilt or innocence." *Neder,* 527 U.S. at 9, 119 S.Ct. 1827.

In these circumstances, harmless error review is inapplicable and the third *Olano* prong is satisfied.

Applying the fourth prong of the *Olano* test, we may exercise our discretion to reverse on the basis of plain error where the error seriously affected "the fairness, integrity or public reputation of judicial proceedings." *Olano,* 507 U.S. at 736, 113 S.Ct. 1770. The error in this case meets that standard.[7] As noted above, a finding by this court that there is sufficient evidence for a rational jury to conclude that the appellants joined the conspiracy post-seizure would deny appellants their right to have a jury decide this question. *See United States v. Nordby,* 225 F.3d 1053, 1061 (9th Cir.2000), *overruled on other grounds by Buckland,* 289 F.3d at 567–68. Having carefully reviewed the record, we also cannot say that the evidence against Jimenez Recio and Lopez–Meza was "overwhelming." *Johnson,* 520 U.S. at 470, 117

S.Ct. 1544(error failed to meet the fourth *Olano* requirement where the evidence against the petitioner was "overwhelming" and had been "uncontroverted" at trial and on appeal). The fourth *Olano* prong is satisfied and we exercise our discretion to remand for a new trial.[8]

## III. Double Jeopardy

▇ Having determined that the use of the *Cruz* rule in the second trial requires that we remand for a third trial, we must address whether we are barred from doing so on double jeopardy grounds.

## A. Sufficiency of the Evidence Review

Jimenez Recio and Lopez–Meza argue that the government presented insufficient evidence at both the first and second trials. We consider the two trials in turn.

### 1. The First Trial

The first trial conducted in this case did not proceed on the basis of our holding in *Cruz.* Instead, the parties assumed at the time of the first trial that the government could prove its case with evidence that Jimenez Recio and Lopez–Meza joined the

---

7. We note that structural error is particularly likely to satisfy *Olano's* fourth prong. *Compare United States v. Garcia–Martinez,* 228 F.3d 956, 964 n. 11 (9th Cir.2000) (describing "structural error" as error "that can never be harmless") *with Johnson,* 520 U.S. at 469–70, 117 S.Ct. 1544 (conducting a harmlessness inquiry at the plain error test's fourth step). In fact, it is difficult to imagine a case where structural error will not satisfy *Olano's* fourth requirement. *Compare Olano,* 507 U.S. at 736, 113 S.Ct. 1770(fourth prong of the plain error test requires an error that "seriously affect[s] the fairness, integrity or public reputation of judicial proceedings") *with Neder,* 527 U.S. at 8, 119 S.Ct. 1827 (structural errors "necessarily render a trial fundamentally unfair") (internal quotation marks omitted).

8. We address only briefly appellants' argument that the government must be held to its

"chosen theory of the case," namely that it was required to prove appellants' pre-seizure involvement in the conspiracy. Appellants claim that the government is now estopped from asserting that appellants were involved post-seizure and, because there remains insufficient evidence of pre-seizure involvement, our decision in *Recio I* must be reaffirmed. However, the government's "chosen theory of the case" in the second trial was predicated entirely on *Cruz,* which was binding precedent prior to *Recio II.* Appellants cite no precedent for their contention that the government's acceptance of binding precedent works an estoppel on its ability to adapt its argument on appeal, after intervening precedent changes the law. This Circuit's practice has been consistently to the contrary. *See, e.g., United States v. Weems,* 49 F.3d 528, 531 (9th Cir.1995).

conspiracy post-seizure. Because the government had every incentive to present its best post-seizure evidence at the first trial, we cannot remand for another trial if we conclude that the government failed to put on sufficient evidence at the first. *See Burks v. United States*, 437 U.S. 1, 11, 98 S.Ct. 2141, 57 L.Ed.2d 1 (1978) ("The [Double Jeopardy] Clause does not allow the State to make repeated attempts to convict an individual for an alleged offense[.]") (internal quotation marks omitted).

In addition to the Supreme Court's holding in *Burks,* two lines of our precedent require us to consider appellants' first-trial insufficiency argument before remanding for a third trial. First, it is our policy to consider sufficiency claims on direct appeal from a final judgment. *See United States v. Bishop*, 959 F.2d 820, 828–29 & n. 11 (9th Cir.1992) (re-affirming this policy after *Richardson v. United States*, 468 U.S. 317, 104 S.Ct. 3081, 82 L.Ed.2d 242 (1984), which held that a sufficiency review is not constitutionally required). Second, we ordinarily allow appellants to challenge interlocutory orders on appeal from a final judgment. *See Am. Ironworks & Erectors, Inc. v. N. Am. Constr. Corp.,* 248 F.3d 892, 897 (9th Cir. 2001) ("A necessary corollary to the final judgment rule is that a party may appeal interlocutory orders after entry of final judgment because those orders merge into that final judgment."). In this case, the district court issued an order that denied Jimenez Recio's and Lopez–Meza's first-trial acquittal motions but granted them a new trial on the conspiracy charge. That interlocutory order could not have been immediately appealed. *See United States v. Sarkisian*, 197 F.3d 966, 983 (9th Cir. 1999) (holding that panel lacked jurisdiction over sufficiency challenge raised in interlocutory appeal from order denying judgment of acquittal but granting new trial). Now that the district court's order has merged into a final judgment, however, Jimenez Recio and Lopez–Meza should be allowed to appeal the evidentiary sufficiency ruling made after the first trial, at least in order to challenge the propriety of a third trial.[9]

Our decision to review the evidence presented at the first trial is consistent with the Supreme Court's analysis in *Richardson. Richardson* held that a second trial following a hung-jury mistrial does not violate the Double Jeopardy Clause if, at the time the second trial begins, no court has ruled the government's first-trial evidence insufficient. 468 U.S. at 325–26, 104 S.Ct. 3081; *see also United States v. Gutierrez–Zamarano,* 23 F.3d 235, 237–38 (9th Cir.1994) (extending this *Richardson* holding to second trials ordered for trial error). *Richardson* also held that appellate courts may no longer exercise jurisdiction over interlocutory insufficiency appeals taken before a second trial has begun. 468 U.S. at 326 n. 6, 104 S.Ct. 3081. Neither of these holdings affects our review here, however, because we do not consider appellants' first-trial insufficiency argument in order to decide whether the second trial violated the Double Jeopardy Clause. We address an entirely different question: whether these defendants may be prosecuted at a *third* trial if the government presented insufficient evidence at the first. The

---

9. Because we ultimately determine that there was sufficient evidence presented at the first trial to convict Jimenez Recio and Lopez–Meza under post-*Cruz* conspiracy principles, we need not decide whether Recio and Lopez–Meza could also use their first-trial insuf-

ficiency argument to challenge their second trial on double jeopardy grounds. *See Sarkisian,* 197 F.3d at 985 n. 7 (reserving the question of whether the sufficiency of evidence at an initial mistrial is reviewable on appeal from conviction at a second trial).

procedural posture of this case allows us to consider this question because the third trial has not yet begun and because appellants' first-trial insufficiency argument is now properly raised on appeal from a final judgment. Consistent with *Burks* and our circuit's precedent, we must review the evidence presented by the government at the first trial in order to determine whether we may remand for a third trial.[10]

Having carefully reviewed the record of the first trial, we conclude that the government presented sufficient evidence to support Jimenez Recio's and Lopez–Meza's conspiracy convictions. The jury was entitled to believe Arce's testimony that a conspiracy existed, and the government presented direct evidence that Jimenez Recio and Lopez–Meza became connected with the conspiracy when they picked up the white Nissan. *See United States v. Alvarez*, 358 F.3d 1194, 1201 (9th Cir.2004) ("When the evidence establishes that a conspiracy exists, there is sufficient evidence to support a conviction for knowing participation in that conspiracy if the government is able to establish, beyond a reasonable doubt, even a slight connection between the defendant and the conspiracy.") (internal quotation marks omitted).

A rational juror could also have concluded that the government's circumstantial evidence proved Jimenez Recio's and Lopez–Meza's knowledge beyond a reasonable doubt. The substantial value of the cocaine and marijuana involved in this case supports an inference that drug smugglers would not have entrusted the pick-up's cargo to an unknowing outsider. *See United States v. Mesa–Farias*, 53 F.3d 258, 259–60 (9th Cir.1995); *see also United States v. Klimavicius–Viloria*, 144 F.3d 1249, 1265–66 (9th Cir.1998). The parallel paths Jimenez Recio and Lopez–Meza followed along indirect back-roads routes also support an inference of knowledge, as do the incredible stories appellants told on arrest. Phone toll records and Arce's testimony about Lopez–Meza's post-arrest statements provide additional support for the jury's verdict. Although mere association is not enough to prove conspiracy, *see United States v. Melchor–Lopez*, 627 F.2d 886, 891 (9th Cir.1980), the circumstantial evidence presented at the first trial is enough when taken together and viewed in favor of the jury verdict.[11] *See United States v. Daychild*, 357 F.3d 1082, 1097 (9th Cir.2004) ("[C]ircumstantial evidence and inferences drawn from it may be sufficient to sustain a conviction of conspiracy.") (internal quotation marks omitted);

10. We note briefly that our approach is consistent with *United States v. James*, 109 F.3d 597 (9th Cir.1997). The appellant in *James* waived his right to challenge a first-trial mistrial because he failed to raise the issue when he could have in his first appeal. 109 F.3d at 599. In this case, however, it is clear that we would not have had jurisdiction over an interlocutory appeal from the district court's order denying appellants' acquittal motions on the conspiracy charge. *See Sarkisian*, 197 F.3d at 983.

11. Although we find sufficient evidence to support the jury's first-trial verdict, it is clear that we may not reinstate that verdict in the government's favor. The Supreme Court held long ago:

it is quite clear, that the order granting a new trial has the effect of vacating the former judgment, and to render it null and void, and the parties are left in the same situation as if no trial had ever taken place. . . . This is the legal effect of the new trial by a court competent to grant it.

*United States v. Ayres*, 76 U.S. (9 Wall.) 608, 610, 19 L.Ed. 625 (1869); *see also Weyant v. Okst*, 101 F.3d 845, 854 (2d Cir.1996). The district court granted a new trial and rendered appellants' initial conspiracy convictions legal nullities. The government had an opportunity to appeal the district court's decision, but did not do so. *See* 18 U.S.C. § 3731; *United States v. Keating*, 147 F.3d 895, 897 (9th Cir.1998). We cannot revive the first jury verdict.

*United States v. Garcia–Guizar,* 160 F.3d 511, 517 (9th Cir.1998) ("[A] defendant's knowledge of and participation in a conspiracy may be inferred from circumstantial evidence and from evidence of the defendant's actions.") (internal quotation marks omitted); *cf. Klimavicius–Viloria,* 144 F.3d at 1266 (jury could infer knowledge from defendant's implausible claim of ignorance and nervous demeanor); *Aguilar v. United States,* 363 F.2d 379, 380–81 (9th Cir.1966) (affirming trial court's decision to draw "affirmative inferences of knowledge" from a "fishy" story).

### 2. The Second Trial

■ In most circumstances, the policy in this Circuit is for reviewing courts to consider claims of insufficient evidence on direct appeal, even if there exists some other basis for reversal, such as an error in the trial proceedings. *United States v. Gergen,* 172 F.3d 719, 724–25 (9th Cir. 1999); *United States v. Bibbero,* 749 F.2d 581, 586 (9th Cir.1984) (citing *Justices of Boston Mun. Court v. Lydon,* 466 U.S. 294, 321–22, 104 S.Ct. 1805, 80 L.Ed.2d 311 (1984) (Brennan, J., concurring)). Consideration of the sufficiency of the evidence presented at a trial that was also marred by procedural error is normally necessary because a finding that the evidence was legally insufficient would bar a new trial. *Bibbero,* 749 F.2d at 586. Thus, we would normally review the evidence presented at the second trial to determine whether the evidence of post-seizure involvement in the conspiracy was legally insufficient to support a conviction.

However, in *Weems,* we created an exception to this requirement where there has been an intervening change in controlling law. 49 F.3d at 530 In *Weems,* the defendant was convicted on three counts of structuring currency transactions to evade the government's reporting requirements. *Id.* at 530. Subsequent to Weems's conviction, but prior to his appeal, the United

States Supreme Court decided *Ratzlaf v. United States,* 510 U.S. 135, 114 S.Ct. 655, 126 L.Ed.2d 615 (1994), holding that in such cases, the government must prove that the defendant knew that the structuring was illegal. The government conceded that, in light of this intervening precedent, Weems's conviction had to be reversed. Weems, however, invoked *Bibbero* and argued that the appellate court was required to weigh the sufficiency of the evidence under the rule announced in *Ratzlaf* before it could reverse for trial error. *Weems,* 49 F.3d at 530–31. We noted that the " 'core' of the Double Jeopardy Clause's prohibition on multiple prosecutions is denying the prosecution a second opportunity 'to supply evidence which it failed to muster in the first proceeding.' " *Id.* at 531(quoting *Tibbs v. Florida,* 457 U.S. 31, 41, 102 S.Ct. 2211, 72 L.Ed.2d 652 (1982)). However, we held that remanding for retrial where there had been an intervening change in controlling law did not "give the government the opportunity to supply evidence it 'failed' to muster at the first trial," since "[t]he government had no reason to introduce such evidence" under controlling precedent. *Weems,* 49 F.3d at 531. We added that retrial in such cases "is not oppressive … it merely permits the government to prove its case in accordance with the recent change in the law." *Id.* Accordingly, we declined to review the sufficiency of the evidence under the new standard and remanded for a new trial.

■ The same considerations guide our decision in this case not to review the sufficiency of the post-seizure evidence presented in appellants' second trial to determine whether a third trial is barred by double jeopardy. As in *Weems,* such an endeavor would be irrelevant in light of the trial error made clear by *Recio II.* Were we to find insufficient evidence of post-seizure involvement in the single-load

conspiracy, we would still remand for a new trial. As in *Weems,* remand for a new trial does not give the government the proverbial "second bite at the apple." At the time of the second trial, the government had no reason to introduce evidence showing that Jimenez Recio and Lopez–Meza joined the single-load conspiracy post-seizure, since binding Circuit precedent (*Cruz*) would have made such evidence unavailing.[12] Following *Weems,* we must "presume[] that the government would have attempted to offer other evidence" showing post-seizure involvement in the single-load conspiracy had such evidence been relevant under existing precedent. *See Weems,* 49 F.3d at 531 (citing *Lockhart v. Nelson,* 488 U.S. 33, 42, 109 S.Ct. 285, 102 L.Ed.2d 265 (1988)). We are not required by the Double Jeopardy Clause to review the sufficiency of the evidence presented at the second trial to determine whether there was legally sufficient evidence to convict Jimenez Recio and Lopez–Meza of post-seizure involvement in the single-load conspiracy, and we decline to do so.

## B. Termination of Jeopardy

■ The remaining issue is whether original jeopardy terminated following our finding of insufficient evidence in *Recio I,* barring us from now remanding the case for retrial. We hold that original jeopardy has not yet terminated and that we may order a new trial without running afoul of the Double Jeopardy Clause.

In *Burks,* the Supreme Court held that "the Double Jeopardy Clause precludes a second trial once the reviewing court has found the evidence legally insufficient." *Burks,* 437 U.S. at 18, 98 S.Ct. 2141. In this regard, *Burks* indicated that for dou-

ble jeopardy purposes an appellate determination of insufficiency of the evidence is the functional equivalent to a jury verdict of acquittal:

> Since we necessarily afford absolute finality to a jury's *verdict* of acquittal—no matter how erroneous its decision—it is difficult to conceive how society has any greater interest in retrying a defendant when, on review, it is decided as a matter of law that the jury could not properly have returned a verdict of guilty.

*Id.* at 16, 98 S.Ct. 2141 (emphasis in original). To hold otherwise "would create a purely arbitrary distinction" between defendants based on the hierarchical level at which the determination was made. *Id.* at 11, 98 S.Ct. 2141. If *Burks* were taken literally in this regard, our insufficiency of the evidence determination in *Recio I* would bar retrial. However, the Supreme Court has clarified that *Burks* applies only to *unreversed* findings of insufficiency of the evidence. *See Justices of Boston Mun. Ct.,* 466 U.S. at 308–09, 104 S.Ct. 1805 ("In *Burks,* we recognized that an unreversed determination by a reviewing court that the evidence was legally insufficient ... served to terminate the initial jeopardy.") (citation omitted); *Richardson,* 468 U.S. at 323, 104 S.Ct. 3081 ("In *Burks* we held that once a defendant obtained an unreversed appellate ruling that the Government had failed to introduce sufficient evidence to convict him at trial, a second trial was barred by the Double Jeopardy Clause."); *see also James,* 109 F.3d at 599.

Our determination in *Recio I* that Jimenez Recio and Lopez–Meza should be acquitted on sufficiency of the evidence grounds was premised on a legal error. In reversing our decision, the Supreme

---

12. The post-seizure evidence that the Government did introduce, including the appellants' fanciful stories on arrest, their possession of pagers, and Jimenez Recio's non-owner insur-

ance policy, was presented to tie the appellants to the conspiracy prior to the government's seizure of the drugs.

Court stated: "We conclude that the Ninth Circuit's conspiracy-termination law holding set forth in *Cruz* is erroneous in the manner discussed. We reverse the present judgment insofar as it relies upon that holding." *Recio II,* 537 U.S. at 277, 123 S.Ct. 819. Because our judgment acquitting Jimenez Recio and Lopez–Meza was predicated on *Cruz,* it has been reversed. Therefore, jeopardy did not terminate upon our finding of legally insufficient evidence in *Recio I,* and Jimenez Recio and Lopez–Meza may be retried on the conspiracy count. *See Justices of Boston Mun. Ct.,* 466 U.S. at 308–09, 104 S.Ct. 1805.

However, we must square our decision to order a third trial with another strand of double jeopardy doctrine. Although the government is barred from appealing a jury verdict of not guilty or a trial court's pre-verdict determination that there is insufficient evidence to convict, a different rule applies to a trial court's grant of a post-verdict motion for acquittal on insufficiency of the evidence. In such cases, the government can appeal the post-verdict acquittal, but only where reversal on appeal would simply reinstate the jury's original guilty verdict. *United States v. Wilson,* 420 U.S. 332, 352, 95 S.Ct. 1013, 43 L.Ed.2d 232 (1975); *United States v. Johnson,* 229 F.3d 891, 892 (9th Cir.2000); *United States v. Martinez,* 122 F.3d 1161, 1163 (9th Cir.1997). It is unresolved whether this doctrine applies with equal force to successful petitions for certiorari following appellate acquittal based on insufficiency of the evidence. *Compare Forman v. United States,* 361 U.S. 416, 426, 80 S.Ct. 481, 4 L.Ed.2d 412 (1960) (indicating that the doctrine does not apply with equal force in such circumstances), *overruled on other grounds by Burks,* 437 U.S. at 17–18, 98 S.Ct. 2141, *with Wilson,* 420 U.S. at 345, 95 S.Ct. 1013(indicating that it does); *see also People of the Territory of Guam v. Okada,* 694 F.2d 565, 566 n. 1 (1982) (applying the doctrine on appeal from Appellate Division of the District Court of Guam).

■■■ We need not resolve this question here, however, because the doctrine governing appeals of post-verdict acquittals cannot fairly be applied to the unusual circumstances of the case at hand. The Supreme Court's holding in *Recio II* reversed our decision that Jimenez Recio and Lopez–Meza should be acquitted without reversing our assessment of the legal sufficiency of the evidence at the second trial. If we applied the doctrine to this case literally, we would be required to reinstate a jury verdict that we have held, unreversed, no rational jury could have reached. Such formal application of this second strand of double jeopardy doctrine would have the perverse effect of harming the appellants with a double jeopardy doctrine intended to protect their constitutional interests.

■■■ We hold that appellants' original jeopardy has not terminated and that subjecting them to a third trial for conspiracy does not violate the Double Jeopardy Clause.

## IV. Jimenez Recio's Ineffective Assistance Claim

■■■ In *Recio I,* we held that Jimenez Recio's counsel's failure to move for acquittal on the possession conviction following the first trial amounted to ineffective assistance of counsel. We found the failure to move for acquittal on the possession count was "so inadequate that it obviously denie[d][Jimenez Recio] his Sixth Amendment right to counsel." *Recio I,* 258 F.3d at 1074(quoting *United States v. Ross,* 206 F.3d 896, 900 (9th Cir.2000), in turn quoting *United States v. Robinson,* 967 F.2d 287, 290 (9th Cir.1992)). Furthermore, we held that "the fact that Jimenez Recio was denied a new trial constitutes prejudice in

its own right." *Recio I,* 258 F.3d at 1074. We now hold that although Jimenez Recio's counsel erred in failing to move for acquittal on the possession count, the fact that Jimenez Recio was denied a new trial no longer constitutes legally cognizable prejudice in its own right.

In reviewing claims of ineffective assistance of counsel, we apply a two-part test: "First, the defendant must show that counsel's performance was deficient. . . . Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial." *Strickland v. Washington,* 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). In *Lockhart v. Fretwell,* 506 U.S. 364, 366, 113 S.Ct. 838, 122 L.Ed.2d 180 (1993), the Supreme Court addressed whether "counsel's failure to make an objection in a state criminal sentencing proceeding—an objection that would have been supported by a decision which subsequently was overruled—constitutes 'prejudice' within the meaning of our decision in *Strickland v. Washington.*" The Court noted that the Sixth Amendment right to counsel exists "in order to protect the fundamental right to a fair trial," and therefore, "an analysis focusing solely on mere outcome determination, without attention to whether the result of the proceeding was fundamentally unfair or unreliable, is defective." *Id.* at 368, 369, 113 S.Ct. 838. In other words, "the court making the prejudice determination may not consider the effect of an objection it knows to be wholly meritless under current governing law, even if the objection might have been considered meritorious at the time of its omission." *Id.* at 374, 113 S.Ct. 838 (O'Connor, J., concurring).

*Fretwell* applies directly to the case at hand. In *Recio I,* we based our determination that Jimenez Recio's counsel's performance was prejudicial on the *Cruz* rule.

The district court in the first trial granted Lopez–Meza a new trial on the possession count because of its omission of the *Cruz* rule, holding that the inclusion of a *Pinkerton* jury instruction created the possibility that the jury had convicted Lopez–Meza based on post-seizure involvement in the conspiracy. Our grant of Jimenez Recio's ineffective assistance claim in *Recio I* assumed that Jimenez Recio would have successfully raised the same claim as Lopez–Meza. However, applying post-*Cruz* conspiracy principles in hindsight, as *Fretwell* requires us to do, the inclusion of the *Pinkerton* instruction on the possession count alone cannot be said to have denied Jimenez Recio his "fundamental right to a fair trial." *See Strickland,* 466 U.S. at 684, 104 S.Ct. 2052. We can no longer say that Jimenez Recio's legal representation was "so inadequate that it obviously denie[d]" him his Sixth Amendment right to counsel. *See Recio I,* 258 F.3d at 1074. Jimenez Recio may have other grounds for claiming that he received ineffective assistance of counsel, but these should be raised in habeas corpus proceedings. *See Ross,* 206 F.3d at 900.

## V. Remaining Claims

On remand, appellants argue that their convictions should be reversed because conviction for post-seizure involvement in a single-load conspiracy would constitute an impermissible variance from the Amended Superseding Indictment governing the second trial. Appellants also argue on remand that the prosecution's introduction of the broader, multi-load conspiracy theory in the second trial constituted an impermissible variance from the Amended Superceding Indictment and the prosecution's prior position in the case. Since we reverse the conspiracy convictions and remand for a new trial, we need not address these claims.

In their original appeal to this Court, appellants argued that although the jury was given a general unanimity instruction, the district judge erred in giving alternative instructions for the single-load conspiracy and the broader, multi-load conspiracy without instructing the jury that it must unanimously agree on one of the two conspiracy theories. This claim is now moot as well.

Finally, our determinations in *Recio I* that the district court did not err in allowing evidence of the odor of burned marijuana in Lopez–Meza's blue Mazda, in denying appellants' motion for a mistrial based on the prosecution's reference to a "stash house," or in admitting the expert testimony of Agent Hinton, are now moot and we need not revisit them. *See Recio I*, 258 F.3d at 1073–74.

**REVERSED and REMANDED.**

GOULD, Circuit Judge, dissenting:

This case involves the second conviction upon jury trial of Jimenez Recio and Lopez–Meza for their participation in a drug conspiracy that unraveled when the police seized a truck containing more than $10 million of illicit drugs. The majority's prior ruling was reversed by the United States Supreme Court because of the majority's reliance on the Ninth Circuit's *Cruz* precedent, which the Supreme Court roundly rejected. The majority persists in reversing the convictions of Jimenez Recio and Lopez–Meza on other faulty grounds. Though recognizing that *Cruz* was erroneous, the panel majority now continues in a different error by substituting its will in the place of the jury's verdict on what are essentially questions of fact. The panel majority contravenes the considered verdicts of the jury which found the guilt of Jimenez Recio and Lopez–Meza beyond a reasonable doubt. Although the second trial, the verdict of which is the subject of this appeal, proceeded with an instruction

pursuant to the *Cruz* rule, that only made it more difficult for the government to prove conspiracy. Because the government's proof of conspiracy was sufficient even under the mistakenly restrictive requirements of *Cruz*, the verdict properly stands. We may not so casually arrogate the role of the jury, nor so lightly disregard the deliberate views of the jury in this case.

There was sufficient evidence for a rational jury to convict both defendants for a multi-load conspiracy and a single-load conspiracy, even with the restrictive *Cruz* instruction. If the evidence is viewed in the light *most* favorable to the government, as is required, there is no need to remand the case for yet a third trial on the single-load conspiracy. I have expressed my views on the sufficiency of the convicting evidence before, *see United States v. Recio*, 258 F.3d 1069, 1077–85 (Gould, J., dissenting), and I reaffirm them here.

The panel majority clings to the view that there was insufficient evidence for the multi-load conspiracy convictions. These convictions are unaffected by taint from *United States v. Cruz*, 127 F.3d 791 (9th Cir.1997), *abrogated by United States v. Recio*, 537 U.S. 270, 123 S.Ct. 819, 154 L.Ed.2d 744 (2003). I disagree with the panel majority's incomplete and incorrect view of the evidence presented at the second trial. There was sufficient evidence that defendants were involved in a running conspiracy involving multiple loads. I need not repeat my exposition, but stand by it. *See Recio*, 258 F.3d at 1082–1085.

Also, a remand for a third trial is necessary only if the evidence was insufficient for the single-load conspiracy convictions under the now-discredited *Cruz* rule. The only potential prejudice of the *Cruz* rule fell on the government; if the pre-seizure single-load conspiracy convictions are based on sufficient evidence even with

*Cruz's* improvident restrictions, then no party has suffered prejudice based on the application of the erroneous *Cruz* rule, where the jury, instructed under it, returned verdicts of guilt. The panel majority, however, holds that the pre-seizure evidence was insufficient. As I explained in my earlier dissent, the panel majority errs.

I summarized my views in first dissent: With respect to Jimenez Recio:

> The evidence of the phone calls to Nu Acres and the non-owner operator insurance policy combined with probative evidence of Jimenez Recio's incredible story upon arrest, the use of pagers and the very high value of the drugs in the truck, is solid evidence when viewed in the light most favorable to the government; it is clearly sufficient for a reasonable jury to have found beyond a reasonable doubt that Jimenez Recio was involved in the conspiracy before the seizure of the drugs.

*Recio,* 258 F.3d at 1081. The same is true for Lopez–Meza:

> The connection between Lopez–Meza, Raul and Nu Acres, the drug's destination, the evidence of Lopez–Meza's implausible story, his two pagers and two phone cards, and his participation in the transportation of more than $10 million of marijuana and cocaine, together demonstrate that a reasonable jury could determine Lopez–Meza's participation in the pre-seizure conspiracy beyond a reasonable doubt, and in my view this evidence is more than sufficient to permit a jury verdict of conviction in the second trial.

*Id.* at 1082.

There is no need to remand for a third trial because there was ample and sufficient evidence to support both defendants' convictions for a single-load conspiracy.

For the broader conspiracy and the single-load conspiracy, "[t]he majority addresses only a part of the evidence ... [and ignores that] the jury said that it had no reasonable doubt. The evidence in the second trial is sufficient to support the jury's decision." *Id.* at 1089–90.

The panel majority acknowledges that the evidence presented at the first trial was sufficient for a rational jury to convict the defendants on a non-*Cruz* conspiracy indictment. This tracks the views that I have previously expressed. *See Recio,* 258 F.3d at 1089 n. 5 (Gould, J., dissenting). One can only hope that, when this case is again predictably appealed after yet another round of predictable guilty verdicts in the defendants' third jury trial, our court will finally abide fundamental principle and will refrain from interposing its views on factual matters that are in the province of the jury.[1]

I respectfully dissent.

---

1. Though misapprehended by the majority, this governing principle has been recognized by jurists for centuries, as the ancient maxim

explains: *Juratores sunt judices facti* ("juries are the judges of fact"). *Jenk. Cent.* 61