**UNITED STATES of America, Plaintiff–Appellee,**

v.

**Michael Curtis KEYS, Defendant– Appellant.**

No. 93–50281.

United States Court of Appeals, Ninth Circuit.

Jan. 20, 1998.

Errol H. Stambler, Los Angeles, California, for defendant-appellant.

John P. Elwood, United States Department of Justice, Washington, DC; Miriam A. Krinsky, and Stefan D. Stein, Assistant United States Attorneys, Central District of California, Los Angeles, California, for plaintiff-appellee.

Before: HUG, Jr., Chief Judge, BROWNING, FLETCHER, PREGERSON, JOHN T. NOONAN, Jr., THOMPSON, LEAVY, TROTT, T.G. NELSON, KLEINFELD, and TASHIMA, Circuit Judges.

TROTT, Circuit Judge:

## I

## Background

In 1992, Keys was charged with and convicted of perjury, the making of a false declaration in federal court in violation of 18 U.S.C. § 1623(a). The statutory "materiality" element of this offense, however, was not submitted for decision to the jury, but, with the assent of both parties, to the trial judge. This practice reflected the established law of this circuit at the time of the trial. After the judgment of conviction, however, we changed the law in another case, *United States v. Gaudin*, 28 F.3d 943 (9th Cir.1994) (en banc); and the change was affirmed by the Supreme Court in *United States v. Gaudin*, 515 U.S. 506, 115 S.Ct. 2310, 132 L.Ed.2d 444 (1995). The law now mandates that the materiality element of such crimes be decided not by the trial judge, but by the trial jury.

On appeal, Keys asks us for the retroactive benefit of this change in the law, and he asks us to review his conviction for error pursuant to Federal Rule of Criminal Procedure 52(a) as though he had objected to the handling of the materiality element. The government takes exception to this request and exhorts us, properly as it turns out, to review instead for "plain error" under Federal Rule of Criminal Procedure 52(b) as defined by the more stringent standards called for by *United States v. Olano*, 507 U.S. 725, 113 S.Ct. 1770, 123 L.Ed.2d 508 (1993).

On September 29, 1995, a three-judge panel of this court unanimously rejected Keys's request, holding (1) that plain error review pursuant to Fed.R.Crim.P. 52(b) and *Olano*

controlled the analysis; and (2) that the assigned error did not "seriously affect the fairness, integrity or public reputation of judicial proceedings." *Olano,* 507 U.S. at 736, 113 S.Ct. at 1779. We granted en banc review of that decision on March 11, 1996.

On September 11, 1996, as an en banc court, we disagreed with the panel, agreed with Keys, and reversed his conviction in favor of a new trial. Our reason was primarily equitable. Since 1970, we had advised counsel in two separate opinions, *United States v. Scott,* 425 F.2d 55, 57–58 (9th Cir. 1970) (en banc) and *Guam v. Yang,* 850 F.2d 507, 512 n. 8 (9th Cir.1988) (en banc), that "when faced with a 'solid wall of circuit authority' endorsing a jury instruction, no objection to that instruction need be registered in the trial court to preserve the point on appeal should that 'solid wall' suddenly crumble in the interim and render the instruction defective." *United States v. Keys,* 95 F.3d 874, 878 (9th Cir.1996) (en banc), *vacated and remanded,* —— U.S. ——, ——, 117 S.Ct. 1816, 1816, 137 L.Ed.2d 1025 (1997). In effect, we had created in *Scott* and *Yang* a nonstatutory exception to Fed.R.Crim.P. 30 which prohibits a party from assigning as error any instruction or omission to which the party did not timely object. Because we had promised attorneys that their failure to object would not be held against their clients on appeal should the law change, we felt bound not to go back on our word or to greet them with a legal hurdle higher than what would have been called for had they objected. Accordingly, we (1) analyzed Keys's claim pursuant to Fed.R.Crim.P. 52(a) for reversible instead of plain error; (2) gave him the benefit of *Gaudin;* (3) concluded that the error was not harmless; and (4) remanded the case for a new trial.

While Keys's petition for a writ of certiorari was pending in the Supreme Court, the Court decided *Johnson v. United States,* —— U.S. ——, 117 S.Ct. 1544, 137 L.Ed.2d 718 (1997). In *Johnson,* the Court held that *Olano* plain error review pursuant to Rule 52(b) applies to jury instructions to which no objection was registered, and rejected the claim that the intervening change in the law wrought by *Gaudin* required otherwise. *Johnson,* —— U.S. at ——, 117 S.Ct. at 1548. The Court explained its reasoning as follows:

[I]t is [Rule 52] which by its terms governs direct appeals from judgments of conviction in the federal system, and therefore governs this case. We cautioned against any unwarranted expansion of Rule 52(b) in *United States v. Young,* 470 U.S. 1, 105 S.Ct. 1038, 84 L.Ed.2d 1 (1985), because it "would skew the Rule's 'careful balancing of our need to encourage all trial participants to seek a fair and accurate trial the first time around against our insistence that obvious injustice is promptly redressed,' " *id.* at 15, 105 S.Ct. at 1046.... Even less appropriate than an unwarranted expansion of the Rule would be the creation out of wholecloth of an exception to it, an exception which we have no authority to make.

*Id.* (citations omitted). The Court stated that it had granted certiorari in *Johnson* "[d]ue to the conflict between this decision and the Ninth Circuit's *en banc* decision [in *Keys* ]." *Id.* In its holding, the Court reaffirmed the plain meaning of Rule 30, but held that Rule 30 "is mitigated ... by Rule 52(b), which allows plain errors affecting substantial rights to be noticed even though there was no objection." *Id.*

On remand from the Supreme Court with instructions to reconsider our *en banc* holding in the light of *Johnson,* we now affirm Keys's conviction. Although in retrospect it was infected with *Gaudin* error that is now plain, we agree with Judge Kleinfeld's original opinion that the error does not "seriously affect the fairness, integrity or public reputation of judicial proceedings." *United States v. Keys,* 67 F.3d 801, 811 (9th Cir.1995); *see Johnson,* —— U.S. at ——, 117 S.Ct. at 1549.

## II

### Facts

Keys was serving time in federal prison for armed bank robbery. A former DEA agent named Darnell Garcia was on trial for conspiracy and other crimes. Another prisoner testified for the prosecution as a key witness against Garcia pursuant to a plea bargain. Garcia called Keys as a witness to impeach the other prisoner. Keys testified that while he and the prosecution witness had shared a

cell, the witness told him he was willing to lie for the government against Garcia in exchange for leniency for himself.

Keys had previously sent a letter to Garcia, who was being held in the same facility. Keys hid the letter among some magazines he asked a guard to deliver to Garcia. A letter smuggled past prison officials to another prisoner is called a "kite." The intercepted kite lends itself to the powerful inference that Keys conspired with Garcia to lie for him at trial in the expectation of money in return. The text of the letter reads:

Hey G.,

I've got everything covered on my end and I'm ready whenever the time is right. I hope that I can really make a difference and you come out on top. Let me know how long you anticipate your thing to last, so I can figure out how long I'll be here. I'm trying to stay as long as I possibly can and try to get a lot done while I'm here. I heard that R.R. left Fri. and he's in Okla. right now. I'm also trying to get a few things from the commissary but they only let us order two cosmetics items a week. If you can hook it up right away I need you to have somebody send this girl some money upstairs, so I can have her get me everything I need from the commissary. It don't have to be nothing but twenty or fifty dollars.

That guy,

P.S. Here's her name and number: Jeanna Carson—Reg. No. 92373–012.

The guard to whom Keys delivered the magazines found and photocopied this kite. Unknown to Keys, he provided a copy of it to his supervisor. On cross-examination, the prosecutor asked Keys about it. Keys flatly denied sending it. His categorical denials became the subject of the false declaration charge of which he stands convicted.

### III

### Instructional Error

Counsel for both sides proposed, and the court gave from our Ninth Circuit Manual of Model Instructions, an instruction correct under the law as it then stood:

### COURT'S INSTRUCTION NO. 16

The defendant is charged in Count One of the indictment with having made a false declaration in violation of Section 1623 of title 18 of the United States Code. In order for the defendant to be found guilty of that charge, the government must prove each of the following elements beyond a reasonable doubt:

First, the defendant testified under oath before a court of the United States;

Second, the testimony was false; and

Third, the defendant knew that the testimony was false.

The statute on which this instruction is based, however, criminalizes only such false testimony as is material, an element not found in this instruction. The statute uses the language, "Whoever under oath ... makes any false material declaration...." 18 U.S.C. § 1623(a). Nevertheless, the instruction, No. 8.29C, did not submit the issue of the materiality of the false testimony to the jury as one of the elements which the government had to prove beyond a reasonable doubt.

This model instruction was based on established Ninth Circuit law. We had held in *United States v. Clark,* 918 F.2d 843, 845 (9th Cir.1990), that "materiality is an issue of law for the court to decide." In *Clark,* we followed the rule set out by the Supreme Court in *Sinclair v. United States,* 279 U.S. 263, 298, 49 S.Ct. 268, 273, 73 L.Ed. 692 (1929). In accord with this understanding, the trial court found that Keys's alleged false declaration was material. No mention of this finding was made to the jury.

### IV

### Analysis

#### A. Application of New Rule of Law

In *Griffith v. Kentucky,* 479 U.S. 314, 107 S.Ct. 708, 93 L.Ed.2d 649 (1987), the Supreme Court held that "a new [constitutional] rule for the conduct of criminal prosecutions is to be applied retroactively to all cases, state or federal, pending on direct review or not yet final, with no exception for cases in which the new rule constitutes a 'clear break'

with the past." *Id.* at 328, 107 S.Ct. at 716 (emphasis added). Embracing Justice Harlan's view, the Court said that failure to do so would violate "basic norms of constitutional adjudication." *Id.* at 322, 107 S.Ct. at 713.

In the instant case, such a new rule was announced in this circuit in 1994 after the defendant's trial in 1992 and before his judgment of conviction became final. The "new rule" is that the materiality element of an allegedly actionable statement must be submitted for a finding in a jury trial to the jury, not to the court.

We announced this holding in *United States v. Gaudin,* 28 F.3d 943, 944 (9th Cir. 1994) (en banc), a case in which the defendant had been charged with making material false statements in violation of 18 U.S.C. § 1001. We held it was error for the district court to have instructed the jury that the materiality element of the charge was established as a matter of law. As noted, the Supreme Court unanimously affirmed our landmark holding. The question presented as described by Justice Scalia was "whether it was *constitutional* for the trial judge to refuse to submit the question of 'materiality' to the jury." *Gaudin,* 515 U.S. 506, 506–08, 115 S.Ct. 2310, 2312, 132 L.Ed.2d 444 (1995) (emphasis added). The answer to this question was "no." *Id.*

■■■ As our colleague Judge Kleinfeld observed in the earlier three-judge panel opinion in this case, an opinion since withdrawn, Justice Scalia expressed the logic of the *Gaudin* Court in a syllogism:

> The Constitution gives a criminal defendant the right to demand that a jury find him guilty of all the elements of the crime with which he is charged; one of the elements in the present case is materiality; respondent therefore had a right to have the jury decide materiality.

*United States v. Keys,* 67 F.3d 801, 808 (9th Cir.1995); *withdrawn by United States v. Keys,* 95 F.3d 874, 876 n. 1 (9th Cir.1996) (citing *Gaudin,* 515 U.S. at 510–12, 115 S.Ct. at 2314)). We agree with Judge Kleinfeld's analysis that "[t]his syllogism applies with equal force to the perjury statute at issue in this case, 18 U.S.C. § 1623." *Keys,* 67 F.3d at 808. The text of the statute renders criminal only false declarations that are ma-

terial, and materiality contains a "factual component." *See Gaudin,* 28 F.3d at 949. The proposition that the element of materiality in a perjury prosecution is to be decided by a judge is "contrary to the uniform general understanding." *Gaudin,* 515 U.S. at 518–19, 115 S.Ct. at 2318–19. Accordingly, we overrule our holding in *Clark* that in a perjury prosecution, materiality is a question of law for the court to determine; and we disapprove old Model Instruction No. 8.29C. Thus, under *Griffith,* Keys is entitled to the benefit of this new constitutional rule because it was announced after his trial and before his case had become final.

■■■ According to *Johnson,* however, Rule 52(b) determines the benefit to which he is entitled, not Rule 52(a) as he requests. Thus, under *Olano* and *Johnson,* we can correct this alleged error not raised at trial only if (1) an error occurred, (2) the error is plain on appeal, and (3) it affects substantial rights. If these conditions are satisfied, we have the discretionary authority to "notice" a forfeited error, but only if (4) the error "seriously affect[s] the fairness, integrity or public reputation of judicial proceedings." *Johnson,* —— U.S. at ——, 117 S.Ct. at 1549. We note here that Keys's failure to object because of the state of the law of the circuit is regarded not as a waiver, but a "forfeiture." *United States v. Perez,* 116 F.3d 840, 845 (9th Cir.1997) (en banc).

## B. Conclusion

■■■ We conclude, and the government concedes, that (1) the instructional omission was error, and (2) that the error is now plain. We need not decide whether the error affected substantial rights, however, because "even assuming that [it did], it does not meet the final requirement of *Olano.*" *Johnson,* —— U.S. at ——, 117 S.Ct. at 1550. In other words, the forfeited error on examination does not require the exercise of our discretion to correct it. *See, e.g., United States v. Uchimura,* 125 F.3d 1282, 1287 (9th Cir.1997) (appellate court may exercise its discretion to notice forfeited error only if it seriously affects fairness, integrity, or public reputation of judicial proceedings).

The record, the evidence against Keys, and the nature of his defense demonstrate without a doubt that the testimony forming the basis for Keys's conviction of perjury was material. As Judge Kleinfeld correctly noted in his dissent to our previous opinion,

The word "materiality" means that "the statement must have a natural tendency to influence, or be capable of influencing, the decision of the decisionmaking body to which it was addressed." *Gaudin,* 515 U.S. at 508–10, 115 S.Ct. at 2313 (internal quotation marks omitted). Keys' defense was that he did not do it, not that what he did was immaterial. He claimed he had not written the kite, did not send it, and that the former DEA agent was not the person to whom the kite was addressed. If the jury in the DEA agent's trial had believed Keys, acquittal would have been more likely. Whether the jury in that case believed the prosecutor's insinuation that Keys had sent the kite, or Keys' denial, would have a natural tendency to influence whether the jury believed Keys.

Keys had an opportunity to argue materiality in his perjury case, albeit to the judge rather than the jury. The prosecutor asked the judge if he was making a determination, and the judge said "As to materiality, definitely. The court finds that it is material." Defense counsel offered no argument to the contrary, doubtless because she did not want to squander her credibility with the judge on a frivolous argument.

*Keys,* 95 F.3d at 883–84.

Keys's decision in the Garcia trial to distance himself from the kite rather than to acknowledge that he sent it is evidence of how damaging and material it was. His credibility in connection with his attack on the credibility of the government's key witness was paramount, and the kite and his denial left his testimony in tatters. It is inconceivable that a properly instructed jury could have failed to deem his testimony to be material.

In closing, we overrule any implication in *Scott* and *Yang,* and in *United States v. Mkhsian,* 5 F.3d 1306 (9th Cir.1993) as well as *United States v. France,* 886 F.2d 223 (9th Cir.1989), that a failure to object to a jury instruction-even where the law of the circuit is clear-will entitle a defendant to have an error claimed for the first time. on appeal measured according to Rule 52(a). Changes in the law will be accorded retroactive effect as required by *Griffith v. Kentucky,* 479 U.S. 314, 107 S.Ct. 708, 93 L.Ed.2d 649 (1987), but only to the extent that the error satisfies the requirements of Rule 52(b) as interpreted in *Olano* and *Johnson.*

AFFIRMED.