Filed 11/25/25  In re M.L. CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(San Joaquin)

----

| | |
|---|---|
| In re M.L., a Person Coming Under the Juvenile Court Law. | |
| THE PEOPLE,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>M.L.,<br><br>Defendant and Appellant. | C102237<br><br>(Super. Ct. No. JJC-JV-DE-2022-0000577) |

Following the juvenile court's sustaining of two separate wardship petitions alleging vehicle theft (two counts), receiving stolen property (two counts), and evading a peace officer, the court continued the minor as a ward of the court and imposed certain probation conditions.  The conditions included restrictions on the minor's use of and access to marijuana and requiring him to write an apology letter to his victims.

M.L. (the minor) contends on appeal that the juvenile court's jurisdiction findings and disposition order must be reversed because there is insufficient evidence to support

1

the court's true findings on the vehicle theft and receipt of stolen vehicle allegations. He also contends the court erred in imposing a probation condition requiring him to write an apology letter to each of his victims and other conditions prohibiting him from using drugs (including marijuana) and alcohol. The minor further contends the court erred in setting a maximum confinement time when he was released home on probation. We will strike the maximum confinement term and affirm the judgment as modified.

## FACTUAL AND PROCEDURAL BACKGROUND

Between April and November 2022, three wardship petitions were filed against the minor with multiple allegations not at issue in this appeal. In July 2022, the minor admitted to grand theft (Pen. Code, § 487, subd. (c)) as alleged in an April 2022 petition. The juvenile court adjudged him to be a ward of the court (Welf. & Inst. Code, § 602), released him to his mother's custody, and imposed probation conditions. In January 2023, the minor admitted to one count of receiving a stolen vehicle (Pen. Code, § 496d, subd. (a)) as alleged in a November 2022 petition; the remaining allegations were dismissed. The court released the minor to his mother's custody and imposed probation conditions. The minor does not challenge either the July 2022 or January 2023 order in this appeal.

### 1. *April 2023 Car Theft*

Sergeant Courtlyn Chappell testified that, at about 2:00 a.m. on April 19, 2023, he was patrolling in a marked patrol car when he noticed a white sedan parked in the middle of the street with no lights on. There was also a grey car parked nearby. The two cars both started traveling southbound, close to each other, leading Sergeant Chappell to think they were together. The two cars then ran a stop sign and drove off in different directions.

Suspecting the occupants of the two cars were involved in criminal activities, Sergeant Chappell got behind the grey car and activated his overhead lights and sirens to initiate a stop. The car did not stop, so Sergeant Chappell pursued it, reaching a speed of

2

64 miles per hour in a 35-mile-per-hour zone. The grey car eventually started to fishtail, struck a curb and several other objects, and flipped over onto its roof. Sergeant Chappell approached the car and found the driver (the minor), who had been ejected, lying in the street. Sergeant Chappell did not see anyone fleeing the scene after the crash.

The owner of the grey car testified his car was stolen sometime after 10:00 p.m. on the previous day, April 18, 2023. The owner testified the car was worth about $10,000. It was extensively damaged when he retrieved it. He never gave the minor permission to drive or take his car.

### 2. *November 2023 Car Theft*

Officer Karl Bernadas testified that he was on patrol around 6:00 p.m. on November 17, 2023, when he noticed a black car. He ran the license plate and learned the car was stolen, so he initiated a traffic stop. When the car stopped, the driver (the minor) jumped from the driver's seat to the rear passenger seat. The front seat passenger remained seated. Officer Bernadas noticed the car's ignition had been removed, and a USB cord was in the ignition.

The owner of the black car testified that her car was stolen the previous day, on November 16, 2023. When police officers returned the car to the owner, the steering column was "busted," the ignition had been pulled out, a rear window was broken, and there was a USB cord in the ignition. The owner estimated the car was worth between $8,000 and $9,000. She never gave the minor permission to drive or take her car.

### 3. *Wardship Petitions, Jurisdiction Hearing, and Disposition Hearing*

In September 2023, when the minor was 17 years old, a wardship petition was filed alleging that in April 2023 the minor evaded an officer causing injury (Veh. Code, § 2800.3; count 1), stole a vehicle (Veh. Code, § 10851, subd. (a); count 2), and received a stolen vehicle (Pen. Code, § 496d, subd. (a); count 3). Count 1 was subsequently amended to allege a violation of Vehicle Code section 2800.2 instead of Vehicle Code section 2800.3.

3

In December 2023, a second wardship petition was filed alleging that in November 2023 the minor stole a vehicle (Veh. Code, § 10851, subd. (a); count 1) and received a stolen vehicle (Pen. Code, § 496d, subd. (a); count 2).

In both petitions, relative to the vehicle theft allegations, the People alleged the minor "did willfully and unlawfully drive and take a certain vehicle." In addition, relative to the allegations for receiving a stolen vehicle, the People alleged the minor "did unlawfully buy and receive" the stolen vehicle.

At the contested jurisdiction hearing in August 2024, the juvenile court sustained both petitions.

According to the probation report, the minor started using marijuana when he was nine years old and was currently using it a few times a day. The minor's father (who was deceased) had a history of substance abuse. Although the minor's mother did not have a history of substance abuse, she had a 2014 conviction for possession of marijuana for sale and possession of a controlled substance for sale.

During the September 2024 disposition hearing, the court noted that it could not think of any auto theft case where it "felt worse for the victims" because they could not afford a replacement car. Although the minor "had a bit of a rough life," he now had "good plans" and "need[ed] to get on track" because he was now 18 years old. The minor "need[ed] to understand that . . . if he picks up another charge," the proceedings would move to adult court, where the emphasis would shift from the minor's best interest to whether the upper, middle, or low term was appropriate.

The court continued the minor as a ward of the court and committed the minor to juvenile hall for 120 days, stayed upon successful completion of 90 days on electronic monitoring. The court released him to his mother's custody and imposed probation conditions, including that the minor (1) "[a]bstain from the use of intoxicants and/or drugs" and (2) "not to illegally use or possess any drug, narcotic, marijuana or alcohol, or associate with persons known to use, possess or traffic in these substances, or frequent

4

places where he knows they are used unlawfully" (the marijuana-related conditions, collectively). The court also ordered the minor to write an apology letter to the victims and participate in a substance abuse detection and treatment program. The minor did not object to any of these conditions. The court stated the maximum period of confinement was six years, and this period is included in the written order.

The minor timely appealed.

## DISCUSSION

### I

### *Sufficiency of the Evidence*

The minor contends the evidence was insufficient to establish that he violated Vehicle Code 10851 and Penal Code section 496d, as alleged in the September and December 2023 wardship petitions. We disagree.

#### 1. *Applicable Legal Principles*

To establish a person is guilty of vehicle theft under Vehicle Code section 10851, subdivision (a), the prosecution must prove "that the defendant drove *or* took a vehicle belonging to another person, without the owner's consent, and that the defendant had the specific intent to permanently or temporarily deprive the owner of title or possession." (*People v. O'Dell* (2007) 153 Cal.App.4th 1569, 1574, italics added.) Thus, Vehicle Code section 10851, subdivision (a) " 'proscribes a wide range of conduct,' " including (1) unlawfully taking a vehicle with the intent to permanently deprive the owner of possession, (2) post theft driving, and (3) joyriding, i.e., driving with intent to temporarily deprive the owner of possession. (*People v. Garza* (2005) 35 Cal.4th 866, 876; see *id*. at pp. 871, 876.) Mere possession of a stolen vehicle under suspicious circumstances may be sufficient evidence to sustain a conviction for violating Vehicle Code section 10851. (*People v. Hopkins* (1963) 214 Cal.App.2d 487, 491.)

To establish a person received a stolen vehicle in violation of Penal Code section 496d, "the prosecution must prove: (1) the [vehicle] was stolen; (2) the defendant knew

the [vehicle] was stolen . . . ; and, (3) the defendant had possession of the stolen [vehicle]."  (*People v. Russell* (2006) 144 Cal.App.4th 1415, 1425, overruled in part on other grounds in *People v. Covarrubias* (2016) 1 Cal.5th 838, 874, fn. 14.)  "Possession of recently stolen property itself raises a strong inference that the possessor knew the property was stolen; only slight corroboration is required to allow for a finding of guilt." (*People v. O'Dell, supra*, 153 Cal.App.4th at p. 1574; see also *People v. Orozco* (2020) 9 Cal.5th 111, 121-122 ["The elements of receipt of [a stolen vehicle] . . . do not require the defendant to have engaged in" taking of that property].)

We review the minor's contentions using the same standard of review that applies in adult criminal cases.  (*In re A.G.* (2020) 58 Cal.App.5th 647, 653.)  Specifically, " 'we review the whole record in the light most favorable to the judgment to decide whether substantial evidence supports the conviction, so that a reasonable fact finder could find guilt beyond a reasonable doubt.' "  (*Ibid.*)  Substantial evidence is "reasonable and credible evidence of solid value."  (*People v. Vargas* (2020) 9 Cal.5th 793, 820.)  We resolve conflicting inferences and credibility findings in favor of the verdict.  (*People v. Collins* (2021) 65 Cal.App.5th 333, 344.)

    *2.  Analysis*

Even though the statutes specify otherwise, the minor contends that, because the September and December 2023 wardship petitions used conjunctive pleading (i.e. "drive and take" for the vehicle theft allegations and "buy and receive" for the receipt of a stolen vehicle allegations), the prosecution was required to prove *both* elements in the counts. According to the minor, there was no evidence that he took or bought either of the stolen cars, meaning the evidence was insufficient to establish the juvenile court's true findings as to the April and November 2023 car thefts.  The minor further asks us to overturn the juvenile court's true findings on the Vehicle Code section 10851 counts because the only evidence establishing that the stolen cars were worth over $950 was the victims'

6

testimony, which he contends is unreliable and insufficient. We find the minor's contentions meritless.

We turn first to the minor's arguments regarding the conjunctive pleading. Regardless of whether there was sufficient evidence to establish that the minor took or bought either of the stolen cars, as courts have explained, "[w]hen a crime can be committed in more than one way, it is standard practice to allege in the conjunctive that it was committed every way. Such allegations do not require the prosecutor to prove that the defendant committed the crime in more than one way." (*People v. Lopez* (2005) 129 Cal.App.4th 1508, 1532-1533.) As such, the prosecution did not have the burden of proving both theories.

Here, there was ample evidence that the minor drove and possessed the stolen vehicles and knew they were stolen. The juvenile court heard testimony from Sergeant Chappell that, early in the morning of April 19, 2023, he saw two parked cars drive away from his patrol car before he turned on his lights and sirens. Sergeant Chappell followed one of the cars on a high-speed chase that only ended when the car crashed. The minor, who was ejected from the car during the crash, was the only person at the scene. Based on this evidence, a rational trier of fact could have inferred that the minor was the driver and knew the car was stolen when he drove it, especially since the owner testified it had been stolen mere hours before the crash, and the minor fled when law enforcement attempted to pull him over. Under these circumstances, we find there was sufficient evidence to support the juvenile court's true findings on the April 2023 vehicle theft and receipt of a stolen vehicle allegations.

Similarly, Officer Bernadas testified that, when he stopped the stolen black car on November 17, 2023, he saw the minor jump from the driver's seat to the rear passenger seat, making it rational to infer that the minor was the driver. A rational trier of fact could also have inferred that the minor knew the car was stolen when he drove it because the car's ignition had been pulled out, a USB cord was in the ignition, and a rear window

7

was broken.  On this record, we find sufficient evidence to support the juvenile court's true findings on the November 2023 vehicle theft and receipt of a stolen vehicle allegations.

We also conclude sufficient evidence supports the juvenile court's findings on the value of the stolen cars.  Each owner testified that his or her car was worth more than $950 at the time it was stolen.  Our Supreme Court has made clear that "[t]he opinion of an owner of personal property is in itself competent evidence of the value of that property, and sufficient to support a judgment based on that value.  [Citations.]  'The credit and weight to be given such evidence and its effect . . . is for the trier of fact.' " (*Schroeder v. Auto Driveaway Co.* (1974) 11 Cal.3d 908, 921; see also Evid. Code, § 813, subd. (a)(2) [the value of property "may be shown" by the opinion of the property's owner].)  We decline the minor's invitation to reweigh the evidence.  (*People v. Jennings* (2010) 50 Cal.4th 616, 638-639 [a reviewing court does not reweigh the credibility of the evidence].)

## II

### *Marijuana-related Conditions:  Vague/Overbroad*

The minor contends the marijuana-related probation conditions are unconstitutionally vague and overbroad.  He also claims they violate the Eighth Amendment prohibition on cruel and unusual punishment.  We disagree.

The People argue the minor has forfeited his challenge to the marijuana-related conditions by failing to raise his objections in the juvenile court.  In general, a minor cannot challenge a probation condition on appeal that he or she failed to object to in the juvenile court.  (*In re Sheena K.* (2007) 40 Cal.4th 875, 882, 888-889.)  However, because the minor is also alleging his counsel provided ineffective assistance during the

8

disposition hearing, we will exercise our discretion and proceed to the merits.[1]  (See *People v. Crittenden* (1994) 9 Cal.4th 83, 146 [a reviewing court may consider the merits of a claim that the appellant failed to raise in the trial court if the potential exists that the appellant has been denied the right to effective assistance of counsel].)

### 1.  *Legal Principles*

A juvenile court has discretion to "impose and require any and all reasonable conditions that it may determine fitting and proper to the end that justice may be done and the reformation and rehabilitation of the ward enhanced."  (Welf. & Inst. Code, § 730, subd. (b).)  In imposing such conditions, the juvenile court must consider the circumstances of the crime and the minor's entire social history.  (*In re Tyrell J.* (1994) 8 Cal.4th 68, 81, overruled on other grounds in *In re Jaime P.* (2006) 40 Cal.4th 128, 130, 139.)

"The permissible scope of discretion in formulating terms of juvenile probation is even greater than that allowed for adults.  '[E]ven where there is an invasion of protected freedoms "the power of the state to control the conduct of children reaches beyond the scope of its authority over adults . . . ." ' [Citation.]  This is because juveniles are deemed to be 'more in need of guidance and supervision than adults, and because a minor's constitutional rights are more circumscribed.' [Citation.]  Thus, ' " 'a condition of probation that would be unconstitutional or otherwise improper for an adult probationer may be permissible for a minor under the supervision of the juvenile court.' " ' " (*In re Victor L.* (2010) 182 Cal.App.4th 902, 910; see also *In re Tyrell J., supra*, 8 Cal.4th at p. 81 [juvenile probation " 'is not an act of leniency, but is a final order made in the minor's best interest' "].)

---

[1]  Given that we affirm on the merits, we need not address the minor's alternate argument that his counsel provided ineffective assistance by failing to object in the juvenile court.

The juvenile court's discretion, however, is not unlimited. "A probation condition is invalid if it: ' "(1) has no relationship to the crime of which the offender was convicted, (2) relates to conduct which is not in itself criminal, and (3) requires or forbids conduct which is not reasonably related to future criminality." ' " (*In re Malik J.* (2015) 240 Cal.App.4th 896, 901.) Under the void for vagueness doctrine, a condition " 'must be sufficiently precise for the probationer to know what is required of him, and for the court to determine whether the condition has been violated.' " (*In re Sheena K., supra*, 40 Cal.4th at p. 890.)

In addition, if a probation condition limits a minor's constitutional rights, the overbreadth doctrine requires that it be narrowly drawn to serve the purposes of rehabilitation and public safety and is closely tailored to meet the juvenile's needs. (*In re Sheena K., supra*, 40 Cal.4th at p. 890.; *In re Victor L., supra*, 182 Cal.App.4th at p. 910.) We review de novo constitutional challenges to probation conditions. (*In re Malik J., supra*, 240 Cal.App.4th at p. 901.)

### 2. Analysis

We turn first to the minor's contention that the marijuana-related conditions are vague and overbroad because they do not require him to knowingly consume or possess marijuana, drugs, and alcohol, and there is no exception for prescriptions drugs that are legally prescribed.

Our Supreme Court has previously held that drug-related probation conditions are "best read as proscribing defendant from *knowingly* using, possessing, or having in his custody or control any illegal drugs, narcotics, or narcotics paraphernalia, without a prescription." (*People v. Hall* (2017) 2 Cal.5th 494, 503.) Accordingly, we read the marijuana-related conditions here as prohibiting the minor from knowingly using, possessing, or having in his custody or control any marijuana, alcohol, or illegal intoxicants, drugs, or narcotics without a prescription.

10

The minor also contends the marijuana-related conditions are constitutionally overbroad "because they require more from [the minor] than is likely humanly reasonable" given his apparent addiction to marijuana, his father's history of substance abuse, and his mother's prior convictions for selling controlled substances. The minor cites no authority supporting the proposition that the marijuana-related conditions are overbroad merely because compliance may be difficult.

Regardless, prohibiting the use of unprescribed drugs or alcohol was "closely tailor[ed]" to the purpose of the challenged conditions, namely rehabilitating the minor by eliminating his substance abuse. (See *In re Sheena K., supra*, 40 Cal.4th at p. 890.) The rehabilitative purpose of these conditions is confirmed by the juvenile court's order requiring the minor to participate in a substance abuse detection and treatment program. In sum, we conclude the marijuana-related conditions are neither overbroad nor vague.

### III

*Marijuana-related Conditions:  Eighth Amendment*

The minor also contends marijuana addiction is a medical condition that cannot "simply be admonished away" and, therefore, barring the minor from using marijuana is "excessive and odious" and violates the Eighth Amendment's prohibition of cruel and unusual punishment. This claim also fails.

As the United States Supreme Court has explained, the Eighth Amendment "embodies 'broad and idealistic concepts of dignity, civilized standards, humanity, and decency . . . ,' [citation], against which we must evaluate penal measures. Thus, we have held repugnant to the Eighth Amendment punishments which are incompatible with 'the evolving standards of decency that mark the progress of a maturing society,' [citations] or which 'involve the unnecessary and wanton infliction of pain.' " (*Estelle v. Gamble* (1976) 429 U.S. 97, 102-103.) The court found that "deliberate indifference to [the] serious medical needs of prisoners constitutes the 'unnecessary and wanton infliction of pain' [citation] proscribed by the Eighth Amendment." (*Id*. at p. 104.)

11

Even assuming *Estelle* applies to a probation condition imposed by a juvenile court on someone who is not confined in prison, the minor's argument fails. Here, as the minor reported to probation, he started using marijuana when he was nine years old, and he was using it multiple times a day at the time of his interview with probation on August 27, 2024, suggesting that he suffers from addiction. Prohibiting the minor from using such substance does not constitute deliberate indifference to his medical needs, especially since the challenged conditions are part of a broader effort to rehabilitate the minor by addressing his substance abuse, including ordering substance abuse treatment for the minor. (See *People v. Brooks* (2010) 182 Cal.App.4th 1348, 1353 [a probation condition prohibiting the defendant from using medical marijuana did not constitute deliberate indifference to his medical needs even though the record showed he was addicted to intoxicating substances].)

**IV**

*Apology Letter*

The minor next contends the probation condition requiring him to write an apology letter to his victims violates his First Amendment right to free speech. (See *Wooley v. Maynard* (1977) 430 U.S. 705, 714 [a state may not prevent residents from covering up the state motto "Live Free or Die" on their vehicle license plates because "the right of freedom of thought protected by the First Amendment against state action includes both the right to speak freely and the right to refrain from speaking at all"].) According to the minor, by imposing this condition, the juvenile court was requiring the minor to "take a particular position, ethical and/or moral in nature, that may or may not reflect [the minor's] views, and/or in a way that compelled [the minor] to express himself." He further argues the court expected the minor to " 'acknowledg[e]' " to himself his " 'personal wrongdoing,' " and " 'empathize with the pain caused to [his] victim[s], and thus express that suffering and regret as genuine remorse.' "

12

Although the minor cites several cases that generally address First Amendment rights, only one considers the First Amendment as applied to probation conditions: *U.S. v. Clark* (9th Cir. 1990) 918 F.2d 843, overruled on other grounds in *U.S. v. Keys* (9th Cir. 1998) 133 F.3d 1282. On appeal, the two codefendants (who were both police officers) challenged a probation condition requiring each of them to publish a public apology, arguing the condition violated their First Amendment right to "refrain from speaking." (*Clark*, at p. 847; see *id*. at p. 844.) The Ninth Circuit disagreed, reasoning that the judge had imposed the condition "for rehabilitation." (*Id.* at p. 848.) Neither of the codefendants had admitted guilt or taken responsibility for their actions, and a public apology therefore "may serve a rehabilitative purpose." (*Ibid.*)

Similarly here, requiring the minor to write a letter of apology to each of the victims was closely tailored to the condition's purpose, namely rehabilitation. (See *In re Sheena K., supra*, 40 Cal.4th at p. 890 [a probation condition may infringe on a minor's constitutional rights if it is "closely tailor[ed]" to the purpose of the condition].) This was not the minor's first offense, and he had already turned 18 by the time of the September 2024 disposition hearing. The juvenile court stressed that the minor "need[ed] to get on track," and he could face more serious consequences if he committed additional crimes as an adult. Requiring the minor to write a letter to his victims could serve to cause him to reflect on his actions and their impact on others. As such, the apology letters may serve a rehabilitative purpose, and we find no error.

## V

### *Maximum Confinement Term*

As this court has previously made clear, it is abuse of discretion for a juvenile court to set a maximum confinement term for a minor who is not removed from his parents' custody. (*In re A.C.* (2014) 224 Cal.App.4th 590, 591-592.) The minor asks us to strike the six-year maximum confinement term in the disposition order. The People agree, and so do we. (*Id.* at p. 592 ["where a juvenile court's order includes a maximum

13

confinement term for a minor who is not removed from parental custody, the remedy is to strike the term"].)

## DISPOSITION

The maximum confinement term is stricken from the juvenile court's order.  As modified, the judgment is affirmed.

       /s/               

EARL, P. J.

We concur:

     /s/           

ROBIE, J.

     /s/           

WISEMAN, J.*

---

\*     Retired Associate Justice of the Court of Appeal, Fifth Appellate District, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.