Filed 3/20/26  In re Y.G. CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(El Dorado)

----

| | |
|---|---|
| In re Y.G., a Person Coming Under the Juvenile Court Law. | |
| THE PEOPLE, | C102977 |
| Plaintiff and Respondent, | (Super. Ct. No. 24JJ0002) |
| v. | |
| Y.G., | |
| Defendant and Appellant. | |

In 2024, the juvenile court sustained two separate wardship petitions alleging minor Y.G. committed assault by means likely to produce great bodily injury, attempted robbery, and simple battery.  Y.G. admitted the assault and robbery allegations and the juvenile court placed him on probation, imposing conditions that included requiring Y.G. to write an apology letter to his assault victim.  The court also found Y.G., who acted with

1

two co-offenders, jointly and severally liable for victim restitution in the amount of $599.99.

Y.G. appeals, challenging the probation condition requiring him to write an apology letter on First Amendment grounds. Relying on recent changes to Welfare and Institutions Code section 730.6,[1] Y.G. also contends he is entitled either to have the restitution order stricken, or to have it apportioned among the co-offenders according to fault. (§ 730.6, subd. (b)(3), as amended by Stats. 2024, ch. 805, § 6.)

We find no error in the court's order for an apology and conclude the victim restitution amendments to section 730.6 apply prospectively only. We affirm the judgment.

## BACKGROUND

In November 2023, Y.G. and three other minors grabbed a 14-year-old boy and threw him to the ground, causing the victim's cell phone to fall out of his pocket. Y.G. and his co-offenders punched and kicked the victim for approximately 15 seconds. One of the co-offenders picked up the victim's cell phone, threw it at a tree, and stepped on it.

On January 3, 2024, the People filed a juvenile wardship petition (Welf. & Inst. Code, § 602), alleging Y.G. assaulted the victim by force likely to produce great bodily injury (Pen. Code, § 245, subd. (a)(4)).[2] Y.G. was not detained and he denied the allegation.

On August 5, 2024, Y.G. and two other minors attacked a 17-year-old boy. Y.G. and his co-offenders yelled "gang related remarks" at the victim; Y.G. told the victim " '[r]un your pockets, give me everything you have,' " and tried to reach into the victim's pockets. Y.G. punched the victim in the face five times. One of the co-offenders grabbed

_____

[1] Further statutory references are to the Welfare and Institutions Code unless otherwise indicated.

[2] Y.G.'s co-offender O.G. was charged with vandalism for damaging the phone.

the victim from behind and wrapped his arms around the victim while Y.G. continued to hit the victim. Another co-offender threw the victim to the ground where the group of offenders, including Y.G., repeatedly kicked him. Eventually, the victim was able to get away.

Following this incident, the People filed a second juvenile wardship petition (Welf. & Inst. Code, § 602) alleging Y.G. committed attempted robbery (Pen. Code, §§ 664/211 [count 1]) and simple battery (*id.*, § 242 [count 2]). This time Y.G. was detained. Once again, he denied the allegations.

Y.G. subsequently admitted the assault allegation in the first petition and the attempted robbery allegation in the second petition. Following an uncontested jurisdiction hearing, the juvenile court declared Y.G. a ward of the court pursuant to section 602 and ordered him placed on home supervision in his mother's home subject to electronic monitoring. One probation condition required Y.G. to write a letter of apology to the 14-year-old boy he assaulted.

Y.G. objected to paying direct victim restitution for the victim's phone, which his co-offender had damaged. The People argued the juvenile court should impose restitution jointly and severally as to all three offenders.

At a contested restitution hearing, Y.G. did not dispute the amount of restitution, but he argued that he should not be held jointly and severally liable for damages to the victim's cell phone as he did not cause the damage. The People responded that, to be liable for restitution, a minor's conduct must be related to the loss, but it need not be the sole cause of the loss. The damage to the victim's phone happened during the assault, and Y.G. was an integral part of that assault.

On November 12, 2024, the juvenile court issued a written decision on restitution. The court found that "there is a sufficient nexus between [the victim's] loss and Y.G.'s conduct. The loss is attributable to conduct that Y.G. at least partially participated in and/or that he aided and abetted. He participated in kicking and punching [the victim],

3

which caused [the victim's] cell phone to fall out of his pocket, making it accessible to the perpetrators. O.G., a coparticipant, picked up the cell phone and threw it against a tree, stomped on it, then walked away with it. While Y.G. did not directly damage the cell phone, his conduct aided in the economic loss. Further, holding all the minors responsible for [the victim's] economic loss serves the 'salutary purpose' of teaching the minors that damaging someone else's property can be 'very, very expensive.' " Accordingly, the court ordered Y.G. to be held jointly and severally liable for the victim's economic loss (totaling $599.99) along with his two co-offenders.

Y.G. filed a timely notice of appeal.

DISCUSSION

I.

*Letter of Apology*

Y.G. contends the probation condition requiring him to write an apology letter to his victim violates his First Amendment right to free speech. (See *Wooley v. Maynard* (1977) 430 U.S. 705, 717.) According to Y.G., by imposing this condition, the juvenile court required him to "take a particular position, ethical and/or moral in nature, that may or may not reflect [Y.G.]'s views, and/or in a way that compelled [Y.G.] to express himself, at all."

Although Y.G. cites several cases that generally address First Amendment rights, only one considers the First Amendment as applied to probation conditions: *U.S. v. Clark* (9th Cir. 1990) 918 F.2d 843, overruled on other grounds in *U.S. v. Keys* (9th Cir. 1998) 133 F.3d 1282. In *Clark*, the two codefendants (both police officers) challenged a probation condition requiring each of them to publish a public apology, arguing the condition violated their First Amendment right to "refrain from speaking." (*Clark*, at p. 847; see *id*. at p. 844.) The Ninth Circuit disagreed. The court explained that "[t]he test for validity of probation conditions, even where preferred rights are affected, is

4

'whether the limitations are primarily designed to affect the rehabilitation of the probationer or insure the protection of the public.' " (*Id*. at p. 848.)

To assess the relevant probation condition on appeal, a court of appeal "must determine whether the sentencing judge imposed the conditions for permissible purposes, and then it must determine whether the [relevant condition is] reasonably related to the purposes." (*U.S. v. Clark*, *supra*, 918 F.2d at p. 848.) In *Clark*, neither codefendant had admitted guilt or taken responsibility for their actions and the Ninth Circuit reasoned that a public apology "may serve a rehabilitative purpose." (*Ibid*.) Thus, "the probation condition was reasonably related to the permissible end of rehabilitation." (*Ibid.*)

A similar analysis must be performed in the juvenile justice system where a probation condition may infringe on a minor's constitutional rights if it is "closely tailor[ed]" to the purpose of the condition. (*In re Sheena K.* (2007) 40 Cal.4th 875, 890.) To advance his cause, Y.G. argues, "[i]t is unreasonable . . . to find that a forced letter of apology is necessary to promote public safety and rehabilitation." We disagree. Perhaps even more so than with adult offenders, requiring a minor to apologize to their victim may serve a rehabilitative purpose. (See *People v. Acosta* (2021) 60 Cal.App.5th 769, 779 [" 'the human brain—especially those portions responsible for judgment and decisionmaking—continues to develop into a person's mid-20s' "].) Requiring Y.G. to write a letter of apology to his victim is closely tailored to that purpose.

This is particularly true where, as here, after the first petition was filed, Y.G., undaunted by the pending criminal allegation, gathered with a different group of boys and attacked a second young victim. Requiring Y.G. to write a letter to his victim and apologize for his conduct could cause him to reflect on his actions and the impact his actions have on others. In short, we find no error.

## II

*Victim Restitution*

*A.     History of Victim Restitution in Juvenile Justice System*

When the juvenile court ordered victim restitution here, the court was permitted to order joint and several liability for victim restitution among co-offenders.  (See *In re S.S.* (1995) 37 Cal.App.4th 543, 550-551; § 730.6, former subd. (h)(2), as amended by Stats. 2015, ch. 131, § 1 [contemplating restitution orders that identify "co-offenders who are jointly and severally liable for victim restitution"].)

Effective January 1, 2025, however, minors may not be held jointly and severally liable for victim restitution.  Assembly Bill No. 1186 (2023-2024 Reg. Sess.) (Assembly Bill 1186) added paragraph (3) to section 730.6, subdivision (b) (section 730.6(b)(3)): "For the purposes of victim restitution, each minor shall be held severally liable, and shall not be held jointly and severally liable as co-offenders.  The court shall apportion liability based on each minor's percentage of responsibility or fault for all economic losses included in the order of restitution.  The aggregate amount of apportioned liability for all minors involved shall not exceed 100 percent in total."

Y.G. argues he is entitled to benefit from this change in the law because his case was not final when the change took effect.  We disagree.

*B.     Legal Principles of Retroactivity*

"[W]hether a statute is to apply retroactively or prospectively is, in the first instance, a policy question for the legislative body which enacts the statute." (*Evangelatos v. Superior Court* (1988) 44 Cal.3d 1188, 1206.)  Our role on appeal "is to determine the intent of the Legislature."  (*People v. Superior Court* (*Lara*) (2018) 4 Cal.5th 299, 307.)

"Ordinarily, statutes are presumed to apply only prospectively, unless the Legislature expressly declares otherwise.  This well-settled principle is codified at section 3 of the Penal Code and appears in other codes as well.  (See, e.g., Code Civ. Proc., § 3;

Civ. Code, § 3.)" (*People v. Burgos* (2024) 16 Cal.5th 1, 7-8 (*Burgos*).) "This rule has been repeated and followed in innumerable decisions." (*Evangelatos v. Superior Court*, *supra*, 44 Cal.3d at p. 1207.)

In *In re Estrada* (1965) 63 Cal.2d 740, however, the California Supreme Court held that a statutory amendment that lessens the punishment for a crime gives rise to an inference that the Legislature intended the amendment mitigating punishment to "apply retroactively to every case to which it constitutionally could apply." (*Burgos*, *supra*, 16 Cal.5th at p. 8.) *Estrada* explained: "When the Legislature amends a statute so as to lessen the punishment it has obviously expressly determined that its former penalty was too severe and that a lighter punishment is proper as punishment for the commission of the prohibited act. It is an inevitable inference that the Legislature must have intended that the new statute imposing the new lighter penalty now deemed to be sufficient should apply to every case to which it constitutionally could apply. The amendatory act imposing the lighter punishment can be applied constitutionally to acts committed before its passage provided the judgment convicting the defendant of the act is not final. This intent seems obvious, because to hold otherwise would be to conclude that the Legislature was motivated by a desire for vengeance, a conclusion not permitted in view of modern theories of penology." (*Estrada*, at p. 745.)

But more recently, our high court has clarified *Estrada*'s " 'limited role' " in interpreting statutes. "*Estrada* informs the application of the default rule 'in a specific context by articulating the reasonable presumption that a legislative act mitigating the punishment for a particular criminal offense is intended to apply to all nonfinal judgments.' " (*Burgos*, *supra*, 16 Cal.5th at p. 14.) *Estrada* does not apply "to statutes that, although arguably lessening punishment in some sense, d[o] not implicate the central rationale behind the *Estrada* inference." (*Ibid.*, citing *People v. Brown* (2012) 54 Cal.4th 314, 321.)

C.      *Assembly Bill 1186 and Section 730.6, Subdivision (b)*

Assembly Bill 1186 does not contain an express retroactivity provision.  "With no 'express declaration of retroactivity or a clear and compelling implication that the Legislature intended' to apply the statute retroactively," we must presume section 730.6(b)(3) "operates prospectively unless the statute 'lessen[s] . . . punishment' within the meaning of *Estrada*."  (*Burgos*, *supra*, 16 Cal.5th at p. 20.)  We must, therefore, determine whether joint and several liability for victim restitution is a punishment that Assembly Bill 1186 sought to lessen.  We conclude it is not.

There are generally two different kinds of restitution:  (1) restitution fines, and (2) direct restitution to the victim.  (See *People v. Kopp* (2025) 19 Cal.5th 1, 13, 15-16 (*Kopp*).)  As our Supreme Court recently reiterated, a victim restitution order is "different from an order to pay a restitution *fine*."  (*Id.* at p. 16.)  A restitution fine "constitutes punishment" and must be imposed in " 'every case where a person is convicted of a crime' " absent "compelling and extraordinary reasons for not doing so."  (*Id.* at p. 13.)  Moreover, following recent legislation, any balance on a restitution fine becomes an unenforceable order 10 years after the fine is imposed.  (Pen. Code, § 1465.9, subd. (d); *Kopp*, at p. 17.)

On the other hand, " '[a]n order of restitution to a victim is not a penal consequence.' "  (*Kopp, supra*, 19 Cal.5th at p. 15.)  Victim restitution is intended to make whole a victim who suffered an economic loss as the result of a defendant's crime; courts " 'shall require that the defendant make restitution to the victim or victims in an amount established by court order.' "  (*Ibid.*)  And unlike an order imposing a restitution fine, which will eventually become an unenforceable order, an order for victim restitution is " 'enforceable as if the order were a civil judgment.' "  (*Id*. at pp. 15-16, 17.)  Despite this well-established distinction, Y.G. argues that where, as here, the juvenile offender was not the direct cause of the economic loss, it would be unreasonable to conclude that

8

"imposition of a financial burden [joint and several liability] is going to be interpreted by a defendant as anything less than punitive . . . ." We are not persuaded.

We recognize that the legislative analysis for Assembly Bill 1186 does include a comment that the elimination of joint liability "is intended to address situations where one minor has complied with their portion of restitution owed but may still be held liable for the other co-offenders who have not paid their portion." (Sen. Com. on Public Safety, Analysis of Assem. Bill No. 1186 (2023-2024 Reg. Sess.) as amended June 24, 2024, p. 6.) When considered in the context of Assembly Bill 1186's entire legislative history, however, this single comment cannot be read as the Legislature's intent to depart from the well-established understanding of victim restitution as a civil remedy. (See *Kopp*, *supra*, 19 Cal.5th at p. 16; see also Pen. Code, § 1202.4, subd. (i).)

At bottom, the default presumption that statutes operate prospectively and the contrary *Estrada* inference of retroactivity for laws that lessen punishment are rules of statutory interpretation meant to help us determine what the Legislature actually intended. (See *People v. Frahs* (2020) 9 Cal.5th 618, 627 ["Courts look to the Legislature's intent in order to determine if a law is meant to apply retroactively"].)

Here, the legislative history demonstrates the Legislature intended section 730.6 (b)(3) to operate prospectively. The report from the Senate Committee on Public Safety on Assembly Bill 1186 provides: " '[Assembly Bill] 1186, as amended, provides meaningful relief from our broken restitution system to adjudicated youth in California by,' among other things, '[*p*]*rospectively* ending joint and several liability for youth co-defendants.' " (Sen. Com. on Public Safety, Analysis of Assem. Bill No. 1186 (2023-2024 Reg. Sess.) as amended June 24, 2024, p. 4, italics added.) The Legislature understood Assembly Bill 1186's proposed change to the rules on victim restitution would apply prospectively only. Because the Legislature did not subsequently amend the bill to specify that the end of joint and several liability would apply retroactively, we infer

9

the Legislature intended the change to the law of victim restitution would operate prospectively only.

Moreover, *Estrada* retroactivity is based on the reasoning "that the Legislature must have intended that the amendment *mitigating punishment* would apply retroactively to every case to which it constitutionally could apply." (*Burgos*, *supra*, 16 Cal.5th at p. 8, italics added.) If the Legislature itself did not consider victim restitution to be punishment, then the *Estrada* inference should not apply.

As previously noted, "[a]n order of restitution is not a penal consequence." (*Kopp*, *supra*, 19 Cal.5th at p. 16.) "[T]he Legislature 'is deemed to be aware of existing laws and judicial constructions in effect at the time legislation is enacted.' " (*People v. Frahs*, *supra*, 9 Cal.5th at p. 634.) We therefore presume that, when it enacted Assembly Bill 1186, the Legislature was aware of the distinction between restitution fines (intended as punishment) and victim restitution (intended as a civil remedy to compensate crime victims for their economic losses). In this case, we need not rely solely on the presumption. The legislative history demonstrates the Legislature did know the difference between restitution fines and victim restitution. A committee report on Assembly Bill 1186 includes a section titled "Victim Restitution vs. Restitution Fines" that explains, "The imposition of a restitution fine is to inflict additional punishment," while "[t]he purpose of victim restitution is to reimburse the victim for economic loss caused by the crime." (Sen. Com. on Public Safety, Analysis of Assem. Bill No. 1186 (2023-2024 Reg. Sess.) as amended June 24, 2024, p. 4.)

We further presume the Legislature was aware of *Evangelatos v. Superior Court*, *supra*, 44 Cal.3d 1188. In *Evangelatos*, the California Supreme Court considered a voter approved measure that modified traditional joint and several liability by "limiting an individual tortfeasor's liability for noneconomic damages to a proportion of such damages equal to the tortfeasor's own percentage of fault." (*Id*. at p. 1192.) The court held the new law did not apply to claims that accrued before the measure's effective date,

relying on the "widely recognized legal principle . . . that in the absence of a clear legislative intent to the contrary statutory enactments apply prospectively." (*Id*. at pp. 1193-1194.)

Based on this authority, it is reasonable to infer that when the Legislature enacted Assembly Bill 1186, it knew victim restitution was not punishment and, consequently, it did not intend Assembly Bill 1186's change in how victim restitution is awarded to implicate *Estrada*. Rather, the Legislature expected that such a change would operate prospectively under the default rule (as happened in *Evangelatos*), unless it expressly specified otherwise. Because the legislative history specifically acknowledged that section 730.6(b)(3) operates prospectively, and the Legislature did not expressly provide otherwise, Y.G. is not entitled to retroactive application of the law.

DISPOSITION

The judgment is affirmed.

/s/
WISEMAN, J.*

We concur:

/s/
RENNER, Acting P. J.

/s/
KRAUSE, J.

---

* Retired Associate Justice of the Court of Appeal, Fifth Appellate District, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

11